**JAN M. BENNETTS**
ADA COUNTY PROSECUTING ATTORNEY

**DAYTON P. REED**
Deputy Prosecuting Attorney
Civil Division
200 W. Front Street, Room 3191
Boise, ID  83702
Telephone:  (208) 287-7700
Facsimile:  (208) 287-7719
Idaho State Bar No. 10775
Email: civilpafiles@adacounty.id.gov

*Attorney for Ada County Prosecuting Attorney Jan M. Bennetts*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PENGUIN RANDOM HOUSE LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RAÚL LABRADOR, in his official capacity as Attorney General for the State of Idaho, et al.,<br><br>Defendants. | **Case No. 1:25-cv-0061-AKB**<br><br>**MEMORANDUM IN SUPPORT OF ADA COUNTY PROSECUTING ATTORNEY JAN M. BENNETTS' MOTION TO DISMISS** |

To have standing to sue Prosecutor Bennetts, Plaintiffs must allege a genuine, credible, specific, imminent threat that the Ada County Prosecutor's Office or Prosecutor Bennetts herself will apply the challenged statute. However, Plaintiffs make no allegation that Prosecutor Bennetts has done anything at all. Plaintiffs have all but confirmed that their alleged harm flows from the

existence of HB 710 alone, and not from any action or threat of action by Prosecutor Bennetts.[1] Plaintiffs' complaint makes clear, "This suit concerns Idaho House Bill 710," dkt. 1, ¶ 4, not Prosecutor Bennetts. Neither the mere existence of a statute, nor a generalized threat that someone, sometime could choose to apply the statute, satisfies the case or controversy requirement of standing. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)*. A case or controversy *requires* that Plaintiffs show an actual and imminent threat that Prosecutor Bennetts will apply the challenged statute against them. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Plaintiffs cannot (and make no attempt to) point to anything Prosecutor Bennetts or her Office has done that would give them reason to fear they stand in the crosshairs of an action brought by the Ada County Prosecutor's Office under Section 18–1517B(5). Instead, they take the position that the mere existence of HB 710 is what causes them their alleged harm. Nor do they satisfy the most basic, fundamental requirements of standing: injury in fact traceable to the actions of the named defendant. No case or controversy exists between Plaintiffs and Prosecutor Bennetts, Plaintiffs lack standing, and the Court lacks jurisdiction. The Complaint should be dismissed as to Prosecutor Bennetts.

---

[1] *E.g.*, Dkt. 22-1, pp. 7–8: "As certain Idaho state prosecutors and the Idaho Attorney General have all but confirmed, HB 710 is designed to chill speech and restrict access to constitutionally protected materials without ever having to resort to the law's express enforcement provisions. Def. Raúl Labrador's Resp. to Pls.' Mot. For A Prelim. Inj. Or, In the Alternative, A TRO at 2, *Northwest v. Labrador*, No. 1:24-cv-00335-AKB (D. Idaho Aug. 26, 2024), ECF No. 36 ('the County Prosecutors and Attorney General all agree, no defendant has done *anything* to threaten to enforce H.B. 710')."

MEMORANDUM IN SUPPORT OF ADA COUNTY PROSECUTING ATTORNEY JAN M. BENNETTS' MOTION TO DISMISS– PAGE 2

## I.  BACKGROUND

### A.  Prosecutor Bennetts' Role as a County Prosecutor

Plaintiffs challenge a state statute, Idaho Code § 18–1517B, passed by the Idaho Legislature. The Ada County Prosecutor does not promulgate legislation, especially not statewide legislation like a state statute. Section 18–1517B became effective July 1, 2024. Plaintiffs are opposed to this statute. The Complaint shows that they disagree with the policy of the statute. Statewide policy is the purview of the Idaho Legislature, not a County Prosecutor. The Complaint also shows that Plaintiffs believe that Section 18–1517B is unconstitutional on its face. Defending state statutes from constitutional challenges is not the role of a County Prosecutor.

Prosecutor Bennetts' purview is making quasi-judicial, case-by-case determinations as to whether it would be in the interest of justice to bring criminal charges. With regard to a purely civil cause of action, the language of the statute gives Prosecutor Bennetts the same discretion whether to bring a civil lawsuit as any member of the public. She does not opine on the facial constitutionality of state statutes[2] or pre-judge hypothetical scenarios. With criminal enforcement, law enforcement conducts investigations and submits reports and evidence to the Prosecutor's Office for review, and the Prosecutor's Office makes the quasi-judicial determination of whether it would be in the interest of justice to bring criminal charges in that set of specific, concrete facts.

---

[2] This fact, among others, distinguishes this case from *Matsumoto v. Labrador*, in which standing was found to sue the Idaho Attorney General after he released an official opinion on the constitutionality of the challenged criminal statute and confirmed the contingent nature of his ability to enforce it. 122 F.4th 787, 798 (9th Cir. 2024). In contrast, a County Prosecutor has no role in advising the public or the Legislature about the constitutionality of statutes, nor does she have the responsibility to defend state statutes from facial constitutional challenges. Further, *Matsumoto* is a panel decision, and to the extent it has any inconsistency with an en banc decision, like *Thomas*, the en banc decision is controlling. *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("a prior decision of the circuit (panel or en banc) [cannot] be overruled by a panel but only by the court sitting en banc").

MEMORANDUM IN SUPPORT OF ADA COUNTY PROSECUTING ATTORNEY JAN M. BENNETTS' MOTION TO DISMISS– PAGE 3

With a civil cause of action, like that under Section 18–1517B, Prosecutor Bennetts would go through the same steps as any other person in evaluating whether or not to bring a cause of action.

In a criminal case, charges brought by the Prosecutor's Office are brought in the name of the State of Idaho, with the State of Idaho listed as the plaintiff. But nothing in Idaho Code § 18–1517B states that actions under that statute are brought in the name of the State of Idaho. Instead, a cause of action for injunctive and monetary relief can be brought by "[a]ny minor . . . or parent or legal guardian," and a more limited cause of action for only injunctive relief can be brought by "[a] county prosecuting attorney or the attorney general." Idaho Code § 18–1517B(3)–(5). If a minor or their parent or guardian ever were to bring an action under Section 18–1517B, that minor or parent or guardian would be the plaintiff, not the State of Idaho. The same goes for a prosecutor who brings an action, if ever: that prosecutor would be the plaintiff, not the State of Idaho. Prosecutor Bennetts acts no more as an agent of the State with regard to Section 18–1517B—a statute she has never used, considered using, or threatened to use—as any other person, and that includes the individual Plaintiffs themselves.

### B. Plaintiffs' Complaint

In their Complaint, Plaintiffs make no allegation at all about Prosecutor Bennetts. They do not allege that Prosecutor Bennetts or her Office have made a statement regarding the statute or its policy, communicated a threat to anyone, or done anything at all. They do not explain why it is even remotely likely that Prosecutor Bennetts will imminently bring an action under Section 18–1517B against them.

The claims enumerated in the Complaint make no mention of Prosecutor Bennetts, either. Obfuscating the fundamental question of "who did what"—which any well-pleaded complaint must clearly state—Plaintiffs tactically employ passive voice and shotgun pleading. For example:

MEMORANDUM IN SUPPORT OF ADA COUNTY PROSECUTING ATTORNEY JAN M. BENNETTS' MOTION TO DISMISS– PAGE 4

- "All Plaintiffs" alleging a claim for "overbreadth" against "All Defendants," write, "The failure to properly incorporate the third prong of the *Miller* obscenity standard into HB 710's definition of material 'harmful to minors' fails to omit from its overbroad sweep materials which, 'taken as a whole,' <u>do</u> have 'serious literary, artistic, political, or scientific value.'" Dkt. 1, ¶ 158. Plaintiffs do not explain in the Complaint who is responsible for this "failure to properly incorporate" that allegedly created the overbreadth that is the source of the Plaintiffs' alleged harms, but instead use passive voice to hide and distract away from that important point. Drafting legislation like HB 710 is the duty of the Legislature, not a Prosecutor. Idaho Const., art. III, § 1. Further, the Donnelly Public Library District is one of the "All Plaintiffs," and Prosecutor Bennetts is one of the "All Defendants." The Plaintiffs use this shotgun pleading language of "All Plaintiffs" and "All Defendants" to disguise their claim that an out-of-county library district is somehow implicating the Ada County Prosecutor in the drafting and enactment of an overbroad state statute without ever alleging that she actually took any such action—which she did not and could not.

- "All Plaintiffs" alleging a claim for "vagueness" against "All Defendants," write, "As a result of this vagueness, constitutionally protected materials have been, and are at risk of being, suppressed and chilled in violation of the First Amendment." Dkt. 1, ¶ 177. Using the same passive-voice and shotgun-pleading tactic, Plaintiffs do not specify in the Complaint who has suppressed and chilled, or who will suppress and chill any constitutionally protected materials. There is no allegation and no evidence that Prosecutor Bennetts has or will suppress or chill any constitutionally protected materials.

- "All Plaintiffs" alleging a claim for "viewpoint discrimination" against "All Defendants," write, "The inclusion of this language in the law's definition of 'sexual conduct' demonstrates that HB 710 is intended to specifically restrict access to, and stigmatize, books that

portray anything having to do with LGBTQ+ characters. As a result of this viewpoint discrimination, books that address LGBTQ+ themes or portray LGBTQ+ characters are being restricted in, removed from, and stigmatized in Idaho public schools and public libraries . . . . Due to this viewpoint discrimination, the Student Plaintiffs are being deprived of their right to access certain books featuring LGTBQ+ [sic.] characters and exploring LGBTQ+ themes . . . ." Dkt. 1, ¶¶ 186–87, 189. Plaintiffs do not specify who intends to restrict access to and stigmatize books; Plaintiffs do not state who has acted in a viewpoint-discriminatory way; Plaintiffs do not state who is allegedly depriving them of access to books. This is intentional because Plaintiffs have no basis to allege that Prosecutor Bennetts has done any of these things, despite the fact that she is one of the "All Defendants" that "All Plaintiffs" deliberately accuse of doing these things.

• "All Plaintiffs" alleging a claim for violating "equal protection" against "All Defendants," write, "[a]s a result of this discriminatory animus, authors of books that portray relationships or romantic encounters between LGBTQ+ characters – many of whom are LGBTQ+ themselves – are subject to their books being removed or restricted from libraries on discriminatory grounds. . . . As a further result of this discriminatory animus, Student Plaintiffs are being denied access to books portraying relationships or romantic encounters between LGBTQ+ characters or exploring LGBTQ+ themes on discriminatory grounds." Dkt. 1, ¶¶ 195, 197. Plaintiffs do not specify who is displaying this discriminatory animus or denying access to any books. Instead, Plaintiffs' shotgun-pled allegations lump "All Defendants" together, without alleging what actions Prosecutor Bennetts has taken that would display any animus or would deny anyone access to any books. Plaintiffs state that "[s]uch conduct violates the Equal Protection Clause of the Fourteenth Amendment," dkt. 1, ¶ 198, but they don't allege any "conduct" on the part of Prosecutor Bennetts whatsoever, actual or threatened.

In contrast to the Complaint's obfuscation regarding what the individual Defendants actually did, Plaintiffs are crystal clear as to the true source of their harm: **HB 710's mere existence**. For example,

- "This suit concerns Idaho House Bill 710 . . . . **HB 710 violates** the First and Fourteenth Amendments rights of publishers, authors, parents, librarians, educators, and students . . ." Dkt. 1, ¶ 4.

- "**HB 710 also violates** the First Amendment by failing to distinguish between minors of different ages." Dkt. 1, ¶ 12.

- ". . . **HB 710 violates** the First Amendment because it imposes impermissibly overbroad and vague restrictions." Dkt. 1, ¶ 15.

- "**HB 710 also violates** the First Amendment by imposing viewpoint-based restrictions . . . ." Dkt. 1, ¶ 17.

- ". . . **HB 710 infringes** on Idaho students' First Amendment rights to receive information . . . ." Dkt. 1, ¶ 18.

- "**The Act also infringes** on book publishers' and authors' First Amendment right to disseminate and have a wide range of their constitutionally protected books read by minors in Idaho." Dkt. 1, ¶ 19.

- "Finally, **HB 710 impacts** the First Amendment rights of school librarians and libraries themselves . . . ." Dkt. 1, ¶ 20.

- "**HB 710 has required** librarians in Idaho to move certain of HarperCollins' titles to adult-only areas or to remove them from circulation entirely . . . ." Dkt. 1, ¶ 35.

- "**HB 710 has already forced** some public and public school libraries to remove *Last Night at the Telegraph Club* or put the novel in adult-only areas; the risk that more Idaho libraries take the same action only grows each day HB 710 remains the law." Dkt. 1, ¶ 45.

- "Cull also worries that Eagle's youth will be less prepared to face life's harder struggles **as a result of HB 710**." Dkt. 1, ¶ 84.

- "In short, **HB 710 has forced** public libraries, school libraries, and librarians within the State to take extreme steps to minimize challenges and litigation under the Act." Dkt. 1, ¶ 138.

- "[T]he **Act's substantive prohibition necessarily attaches** to materials considered harmful to the youngest of minors. **This definition thus restricts** all minors' access to such materials . . . ." Dkt. 1, ¶ 161.

- "**HB 710 also regulates** substantially more speech than the First Amendment permits . . . ." Dkt. 1, ¶ 162.

- "**HB 710 includes** terms that are vague, indefinite, arbitrary, and subject to different meanings such that they fail to provide adequate notice of the obligations they create, in violation of the Fourteenth Amendment to the United States Constitution." Dkt. 1, ¶ 170.

- "**HB 710's vague and confusing terms provide** wholly insufficient guidelines or standards to determine what materials should be deemed 'harmful to minors' and thus restricted under its provisions." Dkt. 1, ¶ 174.

- "**HB 710** is not viewpoint neutral, because it **discriminates** against specific viewpoints . . . ." Dkt. 1, ¶ 182.

- "**HB 710 is intended to specifically restrict** access to, and stigmatize, books that portray anything having to do with LGBTQ+ characters." Dkt. 1, ¶ 186.

- "**HB 710 discriminates** against specific viewpoints by singling out books . . . ." Dkt. 1, ¶ 192.

- ". . . **HB 710 targets** books based on prohibited animus." Dkt. 1, ¶ 193.

The few *actions* Plaintiffs identify that caused them harm are not attributed to Prosecutor

Bennetts. For example,

- "By voting the Act into law, the Idaho Legislature ignored . . . the First Amendment . . . . Following enactment by the Idaho Legislature, Idaho Governor Brad Little signed HB 710 into law on April 10, 2024. . . . HB 710 is the culmination of multiple attempts by the Idaho Legislature to restrict minors' access to books." Dkt. 1, ¶¶ 7, 92, 118.

- "West Ada School District has sent all libraries a list of over 60 titles that must be removed from District libraries, including Rocky Mountain, in an attempt to comply with HB 710's vague and overbroad provisions. . . . Nichols has been instructed by the District to remove these and any other titles included on the District list . . . . Per District policy, Nichols has been instructed to send these titles to her District headquarters . . . . [A]lthough Olivia is now 18 and no longer a minor subject to HB 710's 'protections,' she must nevertheless jump through hoops to access these books via the West Ada School District library." Dkt. 1, ¶¶ 60, 62–63, 78.

- "On July 24, 2024, an anonymous individual submitted 23 written notices to the Eagle Public Library Board (the "Board") pursuant to Idaho Code § 18-1517B(3), requesting that 23 books be relocated or removed from circulation . . . . Pursuant to the requests, the Board removed three of those books from the library shelves and placed them behind the circulation desk." Dkt. 1, ¶¶ 80–81.

- "The Donnelly Library's adult-only policy threatened to shutter the library's afterschool program — the only option for after-school childcare in the small, rural town of Donnelly." Dkt. 1, ¶ 140.

Given that the Plaintiffs speak of HB 710 as though it were the sentient actor causing them harm, it is no surprise that Plaintiffs make a point of emphasizing that "HB 710 is designed to chill speech and restrict access to constitutionally protected materials without ever having to resort to the law's express enforcement provisions." Dkt. 22–1, pp. 7–8. The Complaint demonstrates that this is the thrust of Plaintiffs' entire case: the existence of the statute is what harms them.

## II.  STANDARD

Standing and ripeness are both challenged through Federal Rule of Civil Procedure 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). This motion is brought as a facial attack, and as this Court has succinctly explained,

> A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge jurisdiction either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. Where, as here, an attack is facial, the court confines its inquiry to allegations in the complaint.
>
> When ruling on a facial jurisdictional attack, courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party. However, the plaintiff bears the burden of alleging facts that are legally sufficient to invoke the court's jurisdiction.

*Health Freedom Def. Fund, Inc. v. City of Hailey, Idaho*, 590 F. Supp. 3d 1253, 1261–62 (D. Idaho 2022) (cleaned up).

"A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes it exists." *Coy v. Ada Cnty.*, No. 1:23-CV-00144-AKB, 2023 WL 6623633, at *1 (D. Idaho Oct. 10, 2023) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

## III.    ARGUMENT

If the oft-repeated language in the en banc *Thomas* decision means anything—"neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement"—and if the Supreme Court's requirement in *Summers* of an actual and imminent threat fairly traceable to the challenged action of the named defendant is ever to be heeded, then Plaintiffs lack standing to sue Prosecutor Bennetts when they allege that the existence alone of HB 710 causes their harm. *Thomas*, 220 F.3d at 1139; *Summers*, 555 U.S. at 493.

HB 710 is where Plaintiffs point to assign blame for their harm, not Prosecutor Bennetts— and an injunction against Prosecutor Bennetts would not redress the harm HB 710 is allegedly causing Plaintiffs. Section 18–1517B is not a criminal statute. Unlike with criminal prosecution, which is Prosecutor Bennetts' unique responsibility, Section 18–1517B creates a civil cause of action available to hundreds of thousands of people in Ada County, only one of which is Prosecutor Bennetts. An injunction against her would not redress the harm Plaintiffs allege flows directly from HB 710, without any party "ever having to resort to the law's express enforcement provisions." Dkt. 22-1, pp. 7–8.

### A.  Standing Generally

Federal courts have the constitutional power to adjudicate only genuine "Cases" and "Controversies" under Article III, § 2; exercising that power requires that litigants have standing. *California v. Texas*, 593 U.S. 659, 668 (2021). To have standing to sue Prosecutor Bennetts,

Plaintiffs must satisfy four elements: (1) Plaintiff is under threat of suffering "injury in fact" that is concrete and particularized; (2) the threat must be actual and imminent, not conjectural or hypothetical; (3) it must be fairly traceable to the challenged action of Prosecutor Bennetts; and (4) it must be likely that a favorable judicial decision will prevent or redress the injury. *Summers*, 555 U.S. at 493. Plaintiffs are required to clearly allege facts demonstrating each element of standing to avoid dismissal. *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1175 (9th Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Standing is determined by "the facts as they exist when the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n. 4 (1992); *Yamada v. Snipes*, 786 F.3d 1182, 1203–04 (9th Cir. 2015).

### B. Injury In Fact

Because Plaintiffs seek judicial intervention before anyone has brought a cause of action under Section 18–1517B(5), they bear the burden of alleging a genuine, credible threat that the Ada County Prosecutor's Office will imminently bring such a cause of action, analyzed through four factors: (a) whether the plaintiffs have articulated a concrete plan to violate the law in question, (b) whether the Ada County Prosecutor's Office has communicated a specific warning or threat to initiate proceedings, (c) the history of past actions[3] brought under the challenged

---

[3] Typically, a challenge involving a prosecutor is a challenge to a criminal statute. Section 18–1517B is not a criminal statute. But it does provide a limited cause of action for a County Prosecutor, in addition to a broader enforcement cause of action for members of the public at large. This case is novel, where Plaintiffs chose to sue Prosecutor Bennetts in particular to challenge a statute that provides a purely civil cause of action that any member of the public could bring (and with worse consequences). Where the cases may state "prosecution," the cases have equal applicability to a hypothetical civil lawsuit for purposes of challenges and standing—with the understanding that, unlike with prosecution of criminal statutes, the cause of action under Section 18–1517B is not limited to prosecutors, and a prosecutor bringing a cause of action under Section 18–1517B does not act on behalf of the State any more than any individual bringing that same action.

statute, and (d) whether the challenged law is inapplicable to the plaintiffs, either by its terms or as interpreted by the government. *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210 (9th Cir. 2022) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014); *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010)). Prosecutor Bennetts focuses here on the second factor, the only factor that she can control. Prosecutor Bennetts has done nothing to threaten anyone with initiating proceedings under Section 18–1517B(5), including Plaintiffs, and Plaintiffs do not even attempt to allege that she has.

Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). "[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Thomas*, 220 F.3d at 1139. Plaintiffs must allege a genuine, credible threat of imminent action by the Ada County Prosecutor's Office under the statute. *Unified Data Servs*, 39 F.4th at 1210; *Lopez*, 630 F.3d at 785. But they have not alleged that Prosecutor Bennetts or anyone in her Office has ever threatened anyone with bringing an action under Section 18–1517B(5), let alone the Plaintiffs themselves. "[G]eneral threats by officials to enforce those laws which they are charged to administer do not create the necessary injury in fact."[4] *Lopez*, 630 F.3d at 787 (cleaned up) (citing *United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 88 (1947); *Rincon Band of Mission Indians v. San Diego Cnty.*, 495 F.2d 1, 4 (9th Cir.1974)).

---

[4] To be clear, Plaintiffs do not even allege that Prosecutor Bennetts has made a statement threatening to enforce those laws she is charged to administer; they only allege the existence of an Ada County Prosecutor. But even if Plaintiffs had alleged that Prosecutor Bennetts made such a statement, it would be insufficient to create a standing-sufficient threat.

To have standing against Prosecutor Bennetts, Plaintiffs need to assert an injury that is the result of Section 18–1517B(5)'s actual or threatened use, not the mere existence of its language. Plaintiffs have no standing to sue Prosecutor Bennetts when they allege against her "no action— actual or threatened—whatsoever." *California*, 593 U.S. at 671. To have standing in a pre-enforcement, First Amendment challenge, Plaintiffs are required to allege "a credible threat" of action under Section 18–1517B(5). *Lopez*, 630 F.3d at 785. *See also W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) ("To satisfy the standing requirement, plaintiffs must allege some threatened or actual injury resulting from the application of the statute to them.").

Plaintiffs allege that their fears arise from the mere existence of Section 18–1517B(5), *not* from any threat or warning from Prosecutor Bennetts. This is insufficient. *Thomas*, 220 F.3d at 1139. As the Ninth Circuit has explained, an assertion of standing based on fear stemming from the statute's text "is misguided: our inquiry into injury-in-fact does not turn on the strength of plaintiffs' concerns about a law, but rather on the credibility of the threat that the challenged law will be enforced against them." *Lopez*, 630 F.3d at 792. A plaintiff fails to establish standing when failing to plead any facts of past actions or future warning of bringing an action, but merely recounting "serious" penalties for violation "without any indication that such penalties are imminent or realistic." *Unified Data Servs.*, 39 F.4th at 1211.

This Court has recently explained its "concern[]" over plaintiffs that sue Prosecutor Bennetts to challenge a state statute, but "cannot point to anything [Prosecutor] Bennetts has done that would give them reason to fear they stand in the crosshairs of future prosecution." *Idaho Fed'n of Tchrs. v. Labrador*, No. 1:23-CV-00353-DCN, 2024 WL 3276835, at *5 (D. Idaho July 2, 2024). The Court observed:

> A plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). "[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). Plaintiffs must allege a genuine, credible, specific threat of imminent prosecution by the Ada County Prosecutor's Office and/or [Prosecutor] Bennetts to establish standing. They have not done so.

*Id.*

Plaintiffs intentionally plead and argue that the existence of Section 18–1517B(5) alone is what harms them. This is the precise situation that *Thomas* spoke of when it warned that the mere existence of a proscriptive statute and a generalized threat of enforcement are insufficient to meet the "case or controversy" requirement. *Thomas*, 220 F.3d at 1139. Plaintiffs lack an actual, imminent "injury in fact," and they therefore lack standing. Because there is no case or controversy between Plaintiffs and Prosecutor Bennetts, this Court lacks jurisdiction and the complaint should be dismissed as to Prosecutor Bennetts.

## C. Traceability and Redressability

Plaintiffs trace their harm to the existence of HB 710, and not to any action by Prosecutor Bennetts. Their alleged harm would not be remedied by an injunction preventing Prosecutor Bennetts from bringing an action under Section 18–1517B because she is only one of the hundreds of thousands of potential 18–1517B plaintiffs in Ada County (which includes some of the Plaintiffs themselves)—all of whom could impose more severe consequences on libraries and schools than Prosecutor Bennetts is authorized to impose by HB 710.

To obtain prospective relief, Plaintiffs' have the burden to show "a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them," including showing that "the defendants' 'allegedly wrongful behavior w[ould] *likely* occur or continue.'" *Murthy v. Missouri*, 603 U.S. 43, 69 (2024) (quoting *Friends of the*

*Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)). Plaintiffs are not allowed to "treat the defendants as a monolith," but instead must show "that *each* Government defendant continues to engage in the challenged conduct." *Id.* Plaintiffs fail to show traceability when they "have not shown that they are likely to face a risk of future censorship traceable to the *defendants*." *Id.* at 73.

Plaintiffs do not allege that Prosecutor Bennetts has engaged in any behavior or conduct at all, let alone any wrongful behavior. They do not challenge any conduct of Prosecutor Bennetts. Plaintiffs cannot show why the injury they attribute solely to the Section 18–1517B's existence is in any way traceable to any conduct of Prosecutor Bennetts, nor have they shown any likelihood that they would face a risk of future censorship traceable to her. Instead, by shotgun pleading "All Defendants" and refusing to allege that Prosecutor Bennetts has done anything at all, Plaintiffs inappropriately attempt to treat the Defendants as a monolith and they fail to show that *each* defendant continues to engage in any challenged conduct. Plaintiffs fail to show traceability to Prosecutor Bennetts.

In determining redressability, courts must consider the relationship between the judicial relief requested and the injury suffered. *Murthy*, 603 U.S. at 73 (citing *California*, 593 U.S. at 671). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

Unlike cases like *Matsumoto v. Labrador*, this case does not involve a criminal statute, the enforcement of which is granted only to "government authorities." 122 F.4th at 801. Instead of a small group of prosecutors, Section 18–1517B creates a civil cause of action available to literally hundreds of thousands of people in Ada County alone. Prosecutor Bennetts is merely one person

Section 18–1517B authorizes to bring that cause of action.[5] An injunction against only one individual in Ada County out of hundreds of thousands would not remedy the harm that Plaintiffs allege flows from HB 710—both because Plaintiffs allege that harm flows without any party "ever having to resort to the law's express enforcement provisions." Dkt. 22-1, pp. 7–8, and because a hypothetical action to challenge books could come from any of the other hundreds of thousands of Ada County citizens HB 710 authorizes to bring an action. It is the huge number of unknown HB 710 plaintiffs the statute creates that causes Plaintiffs to fear the statute itself and has caused some libraries and schools to move books to adults-only access. Plaintiffs trace their harm to the existence of HB 710, and not to any conduct of Prosecutor Bennetts, actual or threatened, and an injunction against her would not redress Plaintiffs' alleged harm.

## IV.    CONCLUSION

Plaintiffs' complaint should be dismissed as to Prosecutor Bennetts.

**DATED** this 26th day of February, 2025.

JAN M. BENNETTS
Ada County Prosecuting Attorney


By:    /s/ Dayton P. Reed_____
       Dayton P. Reed
       Deputy Prosecuting Attorney

---

[5] The remedies available if Prosecutor Bennetts were to bring an action are more limited than those available if one of hundreds of thousands of a minors, parents, or legal guardians were to bring one. Section 18–1517B(4), (5).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of February, 2025, I served a true and correct copy of the foregoing *Memorandum in Support of Ada County Prosecuting Attorney Jan M. Bennetts' Motion to Dismiss* electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Deborah A. Ferguson
Craig Durham
FERGUSON DURHAM, PLLC
daf@fergusondurham.com
chd@fergusondurham.com

Victor S. Villegas
LAKEY VILLEGAS LAW AND POLICY
victor@lvlawidaho.com

Daniela Del Rosario Wetheimer
CORNELL FIRST AMENDMENT CLINIC
ddw83@cornell.edu

Michael J. Grygiel
GREENBERG TRAURIG, LLP
grygielm@gtlaw.com

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated as follows:

N/A

By:    /s/ Chyvonne Tiedemann
       Legal Assistant

MEMORANDUM IN SUPPORT OF ADA COUNTY PROSECUTING ATTORNEY JAN M. BENNETTS' MOTION TO DISMISS– PAGE 17