RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

AARON M. GREEN, ISB #12397
MEGAN ANDERSON, ISB #10094
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
aaron.green@ag.idaho.gov
megan.anderson@ag.idaho.gov

*Attorneys for Defendant Raúl Labrador*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PENGUIN RANDOM HOUSE LLC et al., | Case No. 1:25-cv-00061-AKB |
| *Plaintiffs,* | **MEMORANDUM IN SUPPORT OF DEFENDANT RAÚL LABRADOR'S MOTION TO DISMISS** |
| *v.* | |
| RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, et al., | |
| *Defendants.* | |

## INTRODUCTION

It is the policy of the State of Idaho that parents, not third parties or strangers, have the right to decide whether their children should view obscene material. For over 50 years, Idaho has criminally prohibited disseminating material harmful to minors, while exempting schools and public libraries from that criminal prohibition. *See* Idaho Code §§ 18-1515, 18-1517(d); Ex. A at 12–13. Idaho's definition of "harmful to minors" was specifically designed to comply with U.S. Supreme Court precedent on obscenity and, again, has been in effect for almost 50 years. *See* Idaho Code § 18-1514(6); Ex. B. In 2024, the Idaho legislature passed H.B. 710 to extend the prohibition on providing material harmful to minors to schools and public libraries. It did so by, in part, creating a civil cause of action allowing the Attorney General and county prosecuting attorneys to sue to obtain injunctive relief against a school or public library which has violated the law. *See* Idaho Code § 18-1517B(5). Plaintiffs now seek an injunction prohibiting the Attorney General from seeking a court order to prevent public schools and public libraries from providing obscene material to minors.

Plaintiffs' claims fail. They raise claims only concerning government speech in public libraries and public schools which is not subject to First Amendment strictures; include a political subdivision which cannot sue its parent state; ask the court to painfully misinterpret the statute and then enjoin the enforcement of a statute that does not exist; and raise claims for which no plaintiff has standing. The Court should dismiss the Complaint.

## LEGAL STANDARD

The Attorney General brings this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). To survive a motion to dismiss under Rule 12(b)(6) the Plaintiffs must plead sufficient factual allegations taken as true to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court does not have to accept as true a "legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). Standing is a question properly raised under Rule 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In this case, Plaintiffs lack Article III standing as the allegations in the complaint are "insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Plaintiffs bear the burden of establishing standing by clearly alleging "facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). Article III standing is a threshold issue that must be met. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

In construing state law, this Court adopts the methods of textual interpretation favored by the Idaho Supreme Court. *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458, 485 (9th Cir. 2024) (citation omitted). In Idaho, "[t]he Court should, whenever possible, construe a statute so as to achieve a constitutional result." *Bradbury v. Idaho Jud. Council*, 136 Idaho 63, 68, 28 P.3d 1006, 1011 (2001) (citation omitted). If the Court "finds that a statute is capable of two interpretations … the court should adopt [the] construction which upholds the validity of the act." *Regan v. Denney*, 165 Idaho 15, 22, 437 P.3d 15, 22 (2019) (citation omitted).

When there are "multiple definitions for . . . terms" the Court should "apply a reasonable limiting construction to legislative measures in order to avoid facial unconstitutionality." *State v. Doe*, 148 Idaho 919, 933, 231 P.3d 1016, 1030 (2010) (citation omitted); *see also State v. Wees*, 138 Idaho 119, 122, 58 P.3d 103, 106 (Ct. App. 2002) (collecting cases). "To ascertain the legislature's intent, this Court examines the literal words of the statute, the context of those words, the public policy behind the statute, and the statute's legislative history." *Fell v. Fat Smitty's L.L.C.*, 167 Idaho 34, 38, 467 P.3d 398, 402 (2020) (citation omitted).

**ARGUMENT**

Plaintiffs' complaint must be dismissed under both Rule 12(b)(6) and (b)(1).

## I.  The Complaint fails to state a claim under Rule 12(b)(6).

Plaintiffs indiscriminately merge two statutes without regard for history, structure, grammar, or state law canons. They do this without any speech interests of their own to vindicate. Looking to construe the law to achieve a constitutional result, the Court should dismiss the Complaint under Rule 12(b)(6). *See Bradbury*, 136 Idaho at 68, 28 P.3d at 1011.

### A.  Count I – Neither statute is overbroad under the First Amendment.

Count I of the Complaint alleges that the statute is overbroad. Dkt. 1 at ¶¶ 152–66. This claim must fail since the government speech doctrine makes clear that the decisions of what books to shelve in public school libraries and public libraries are not subject to First Amendment scrutiny. Even then, the statute complies with *Miller*, meaning there is no claim for overbreadth or vagueness. Obscene material and its presentation have no defense under the First or Fourteenth Amendment. *Kois v. Wisconsin*, 408 U.S. 229, 230 (1972). The failure of this count is, by and large, dispositive of the others.

### 1. *Government speech doctrine applies to public libraries and schools.*

The actions of public libraries and public schools in shelving and un-shelving books—and the State in making determinations about what is appropriate for a school or public library it pays for or organizes—is government speech. Speech by the government is not subject to any First Amendment scrutiny and the government can choose, based on its own viewpoint, what to say, and when and how to say it. *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (citations omitted). "That freedom in part reflects the fact that it is the democratic electoral process that first and foremost provides a check on government speech." *Id.* (citation omitted). When, for example, "a public high school is the speaker, its control of its own speech is not subject to the constraints of constitutional safeguards and forum analysis[.]" *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003, 1013 (9th Cir. 2000).

"To determine whether speech can be reasonably viewed as coming from the government, [the Ninth Circuit looks] to non-exhaustive factors, including (i) who was directly responsible for the speech, (ii) who had access to the forum in which the speech occurred, (iii) who maintained editorial control over that forum, and (iv) the purpose of the forum." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 728 (9th Cir. 2022) (citing *Downs*, 228 F.3d at 1011–12); *see also Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 472–73 (2009).

In this case, Plaintiffs raise claims relating *only* to public school and public library collections. *E.g.*, Dkt. 1 at ¶¶ 2, 6, 49, 50-58, 59, 65, 72, 74. The place in which the speech at issue is occurring is the library collection. Only the agents of these political subdivisions have access sufficient to modify this collection and exercise editorial control over the contents of these collections. Idaho Code § 33-2702(6) (public library service means "the provision of

planned collections of materials and information services provided by a library" and "paid for primarily through tax support provided under these statutes"); Idaho Code § 33-2721(1) (library director responsible for acquiring library materials under the board); Idaho Code § 33-512(8) (school district to "equip and maintain a suitable library"); *cf.* Idaho Code § 33-137(2)(a) (requiring online libraries for K-12 students to prevent minors from accessing material harmful to minors). The purpose of a school library is pedagogical. And in the case of a public library, the purpose is "the provision of *planned collections* of materials and information services[.]" Idaho Code § 33-2702(6) (emphasis added). In either case, the government acts as the gatekeeper, purchaser, and curator of the collection it provides at public expense.

"With respect to the public library, the government speaks through its selection of which books to put on the shelves and which books to exclude." *PETA, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005); *see also Little v. Llano Cnty.*, 103 F.4th 1140, 1159 (5th Cir. 2024) (Duncan, J., dissenting) reh'g en banc granted, vacated by 106 F.4th 426 (mem.). This view has also commanded a plurality of the Supreme Court. *See United States v. Am. Library Ass'n*, 539 U.S. 194, 206 (2003) ("A public library does not acquire Internet terminals in order to create a public forum . . . any more than it collects books in order to provide a public forum for the authors of books to speak.") (plurality opinion). When the government funds one activity (i.e., by buying and displaying books) it need not fund all similar activities—by buying and displaying all books. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998); *see also McGriff v. City of Miami Beach*, 84 F.4th 1330, 1333–34 (11th Cir. 2023) (art exhibition curation).

A library has limited space. It needs to pick and choose which authors and books to

purchase, display, and arrange. As a government entity with concededly limited resources, Dkt. 1 ¶¶ 50–52, a public school or public library cannot possibly make all private speech available to the public. In *Bethel School District*, the U.S. Supreme Court, addressing its decision in *Board of Education v. Pico*, 457 U.S. 853 (1982), stated that "in addressing the question whether the First Amendment places any limit on the authority of public schools to remove books from a public-school library, all Members of the Court, otherwise sharply divided, acknowledged that the school board has the authority to remove books that *are vulgar*." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986) (emphasis added). Not obscene, merely *vulgar*. That is power far beyond what has been exercised here.

Because democratically accountable library districts and school boards curate and purchase materials to display in a library, the choice of books and how to arrange or display them is government speech. The State's decision to direct the arrangement of books in public libraries and public schools, even in cases of non-obscene speech, therefore cannot be challenged on First Amendment grounds. But if the Court "invoke[d] the Constitution to protect [Plaintiffs'] ability to make [their] voice a part of the voice of the government," the Plaintiffs "would be able to do to the government what the government could not do to [Plaintiffs]: compel it to embrace a viewpoint." *Downs*, 228 F.3d at 1015 (citation omitted). Plaintiffs have no such right, and the government can certainly ensure that *its* speech, including speech from its political subdivisions, is not harmful to minors.

### 2. *The statutes apply Miller's guidance.*

In addition to the fact that the government speech section prohibits this First Amendment challenge, the First and Fourteenth Amendment claims also fail because Idaho

Code §§ 18-1514 and 18-1517B apply the standard articulated in *Miller v. California*, 413 U.S. 15 (1973) as applicable to minors through *Ginsberg v. New York*, 390 U.S. 629 (1968) and *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 214 n.11 (1975). This standard permits states to regulate, at a minimum, works that: 1) an average person applying community standards would find that the work appeals to the prurient interest, 2) contain patently offensive sexually explicit conduct, and 3) lack serious value. *Miller*, 413 U.S. at 24. On this point, the Attorney General incorporates by reference his arguments in *Northwest*. *See* No. 1:24-cv-00335-AKB (D. Idaho) Dkt. 32-1 at 17–24; Dkt. 41 at 6–11. Plaintiffs' challenges to Idaho Code §§ 18-1514 and 18-1517B rely on the Court taking the least constitutional view of the statute, ignoring potential limiting constructions, and applying a scrivener's error rather than looking to the intent of the statute. *See Bradbury*, 136 Idaho at 68, 28 P.3d at 1011; *Regan*, 165 Idaho at 22, 437 P.3d at 22; *see also* Ex. B. The challenges premised on a lack of compliance with *Miller* and progeny fail for the reasons stated in prior briefing.

### 3. *The Plaintiffs* have no speech interests to vindicate.

Corollary to the above discussion of government speech, Plaintiffs have not articulated how their speech rights are implicated in what a library chooses to shelve or relocate.

Take the authors and publishers first. They claim that they have a free speech right to communicate with their audience. Fair enough. But do they have a constitutional right to force a government entity to buy their books and make them available to their patrons? How about the State of Idaho? Dkt. 1 ¶¶ 19, 48–49, 164. If the answer is yes, the result would require that Donnelly (and every other public library) figure out a way to become the Library of Congress in order to avoid making content-based decisions. That is not the law. The fact that the

government does not need to sponsor all speech and may choose some private speech to broadcast over others on a content-based rationale is well settled. *Am. Library Ass'n*, 539 U.S. at 204–05 (citing *Finley*, 524 U.S. 569 and *Arkansas Ed. Television Comm'n v. Forbes*, 523 U.S. 666 (1998)). Again, libraries are curators, they need not buy every book or display every book— including for the bare reason that they or the State believe the material (in a hypothetical case) is not suitable for a public library. *Cf. Moody v. NetChoice, LLC*, 603 U.S. 707, 731–32 (2024) ("[d]eciding on the third-party speech that will be included in or excluded from a compilation . . . is expressive activity of its own"). The same rule applies here: Plaintiffs have no First Amendment right to require a State to buy their books or to arrange them just-so once they are in state hands. The government can exercise its own editorial discretion as a speaker itself.

Next, take the librarian Plaintiff. As a government employee who is making shelving decisions and communicating with students on government time within the course and scope of her employment—even if we assume that all of her duties are pure speech—she is "not speaking as [a] citizen[] for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). She is instead a government speaker, and to the extent that she makes editorial judgements or curation decisions, those are wholly under the control of the school district and, as a political subdivision of the State, the State of Idaho. *Downs*, 228 F.3d at 1014–16. She has no First Amendment right to curate according to her own personal taste or preference. *See id.* There is therefore no First Amendment right at issue, and the claim fails. *See Garcetti*, 547 U.S. at 418.

What is left are the patron Plaintiffs. The patron Plaintiffs' only potential First Amendment harm is a stigma harm. No plaintiff alleges an inability to obtain the books they

desire from the libraries they access. Dkt. 1 ¶¶ 69, 75, 81–82. As discussed in *Northwest* briefing, the Eighth Circuit has held that even requiring certain books to be in the "adults only" section of a library, or covered in opaque wrapping, is not an unconstitutional chill on patron speech or right to receive information. *Upper Midwest Booksellers Ass'n v. City of Minneapolis*, 780 F.2d 1389, 1395–96 (8th Cir. 1985). "Adults are still free to request a copy of restricted material to view from a [librarian] or to peruse the material [elsewhere]. More significantly, adults are still able to view any of the material in a free and unfettered fashion by purchasing it." *Id.* at 1395.

Separately, whether as to minors or adults, the right to receive information as a right-in-itself distinct from the rights of a speaker, has only been applied by the Supreme Court as far as a right to receive information in one's own home, "which was hardly more than a reaffirmation that 'a man's home is his castle.'" *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 66 n.13 (1973) (discussing *Stanley v. Georgia*, 394 U.S. 557 (1969)). To the extent that minors want to receive information, it is no infringement on anyone's First Amendment right to require them to ask a parent to obtain that information with them. Idaho Code § 18-1517B(6)(b). Indeed, that requirement is Idaho's support for the *parent's* right to raise their children and be present when they receive obscene material. *Ginsberg*, 390 U.S. at 639. That right of parents is the constitutionally unimpeachable heart of H.B. 710.

## B. Count II – Neither statute is unconstitutionally vague because the words of the statute have plain meanings and clear limits.

Count II claims that Section 18-1517B is unconstitutionally vague. Dkt. 1 at ¶¶ 167–78. Recently the Ninth Circuit has affirmed that even a statute with "awkward construction," does not fall afoul of the Fourteenth Amendment under the more stringent criminal enforcement standard, and as applied to speech. *Matsumoto v. Labrador*, 122 F.4th 787, 805 (9th

Cir. 2024). And even if a statute gives an "imprecise but comprehensible normative standard," this is acceptable. *Id.* (finding statute not unconstitutionally vague) (quoting *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1020 (9th Cir. 2013)). Here, we are far afield from a statute that the Complaint says gives "no guidance as to what is covered and/or required[.]" Dkt. 1 ¶ 171 (citing Idaho Code § 18-1514). The definition of "harmful to minors" provides *Miller*-based guidance for what constitutes obscenity. Idaho Code Section 18-1517B provides guidance as to what schools and public libraries must do, or not do, to avoid civil liability. And ultimately, this challenge fails because, other than the Donnelly library Plaintiff, none of the parties are regulated parties. Idaho Code § 18-1517B(5) (permitting action against "any school or public library"). No Plaintiff can be chilled by the vagueness of a law that, on its own terms, is not enforceable against them.

## C. Count III – Neither statute discriminates based on viewpoint because "homosexuality" refers only to sexual intercourse in line with *Miller*.

Claim III argues that the statue engages in unlawful viewpoint discrimination because, per their improper interpretation of a 50-year-old statute, it singles out books on homosexuality. Dkt. 1 at ¶¶ 179–89. Even without the government speech exception, the claim still fails because it relies on the misreading of a single word. As discussed in *Northwest*, the context in which the word "homosexuality" is found—a string of sexually explicit conduct, further cabined by the requirement that such conduct be "patently offensive"—indicates that the word refers to homosexual sexual intercourse, to be contrasted with heterosexual sexual intercourse that is covered by the phrase "sexual intercourse." Idaho Code § 18-1514(3), (6)(b); *State v. Schulz*, 151 Idaho 863, 867, 264 P.3d 970, 974 (2011) (citation omitted); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 195–198 (2012)

(Associated-words canon or noscitur a sociis). This is true even if there is some overlap between words in a list. *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 881–82 (9th Cir. 2001). This construction, is again, further buttressed by the canon of construction "to avoid a conflict with the state or federal constitution." *State v. Gomez-Alas*, 167 Idaho 857, 866, 477 P.3d 911, 920 (2020) (citation omitted) (construing criminal statute against the "infamous crime against nature" to be constitutional). Homosexuality simply does not mean in this context any sweeping arc of same-sex behavior that Plaintiffs misread. *See*, Dkt. 1 ¶ 105. It refers to explicit homosexual sexual conduct.

## D. Count IV – Neither statute violates equal protection because, among other things, they make distinctions based on obscene content, not persons.

Count IV claims a violation of the Equal Protection clause by, again based on their erroneous interpretation of the statute, discriminating on the basis of gender identity or sexual orientation. Dkt. 1 at ¶¶ 190–97. This count fails for all the reasons cited above, plus another one. Assume for the sake of argument the unsupported conclusion that the term "homosexuality" *is* evidence of animus. Dkt. 1 ¶ 193. Animus against "homosexual" books or (matters more broadly) is not a constitutionally cognizable claim under the Equal Protection Clause, which protects "persons" not books. U.S. CONST. amend. XIV, § 1; *accord Romer v. Evans*, 517 U.S. 620, 631–32 (1996) (collecting cases); *see also cf. Poway*, 658 F.3d 954, 975 (9th Cir. 2011) ("Because Johnson had no individual right to speak for the government, he could not have suffered an equal protection violation."). No Plaintiff alleges that they themselves, rather than books, are discriminated against. *See* Dkt. 1 ¶¶ 195–97. This is really just a failed viewpoint discrimination claim restated under a constitutional provision that doesn't fit.

Of course, there is no real animus here. The same doctrines that defeat the viewpoint

discrimination charge defeat this claim too—the association of "homosexuality" with other words describing explicit sexual acts illuminate what the word means in Section 18-1514. Plaintiffs don't articulate anything in the complaint that suggests that the word is only explainable as unconstitutional animus, as in *Romer*. 517 U.S. at 634-35. And by contrast, the point of the statutes challenged here is not to "impos[e] a broad and undifferentiated disability" against a person, *id.* at 632, but to satisfy the recognized state interest in helping parents protect their children from obscene matters, including those that contain explicit sexual conduct. *Ginsberg*, 390 U.S. at 639–40. Plaintiffs offer nothing other than their misinterpretation of the statute to support their bare legal conclusion.

## II.  Plaintiffs lack Article III standing.

All Plaintiffs lack standing under both the *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) test and the pre-enforcement standard. To establish Article III standing Plaintiffs must demonstrate injury in fact, traceable to a Defendant's conduct, and redressable by a favorable decision. *Matsumoto*, 122 F.4th at 797. The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560–61. Alleging future injuries, Plaintiffs must establish: "(1) whether the plaintiff has a concrete plan to violate the law, (2) whether the enforcement authorities have communicated a specific warning or threat to initiate proceedings, and (3) whether there is a history of past prosecution or enforcement." *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (internal quotes omitted).

Even pleading a First Amendment chill, Plaintiffs must satisfy "the[se] rigid constitutional requirement[s]." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (internal

quote omitted). The mere existence of an enforceable statute is not sufficient, *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000), and neither are "allegations of possible future injury[.]" *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013) (internal quotes omitted). "To obtain forward-looking relief, the plaintiffs must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." *Murthy v. Missouri*, 603 U.S. 43, 45 (2024). This "causal connection" between an alleged injury and challenged conduct, must be more than "the result of [an] independent action of some third party not before the court." *Lujan*, 504 U.S. at 560.

### A. The Donnelly Public Library District is a political subdivision which cannot sue state officials in federal court for federal constitutional claims.

The Donnelly Public Library District is a political subdivision of the State of Idaho. As such, it cannot sue the State, its officers, or other political subdivisions for federal constitutional claims in federal court. *City of South Lake Tahoe v. Cal. Tahoe Reg. Planning Agency*, 625 F.2d 231, 233 (9th Cir. 1980). The Ninth Circuit, has "consistently held that political subdivisions lack standing to challenge state law on constitutional grounds in federal court." *City of San Juan Capistrano v. Cal. Publ. Utilities Comm'n*, 937 F.3d 1278, 1280 (9th Cir. 2019). Here, Donnelly challenges state law on constitutional grounds, *see generally* Dkt. 1, but it is a "creature" of statute which cannot seek relief against its "creator," the State of Idaho or its officers. *See* Chap. 27, Title 33, Idaho Code (state establishment of library districts); *see also Pioneers Mem. Healthcare Dist. v. Imperial Valley Healthcare Dist.*, ___ F.Supp.3d ____, No. 24-CV-861 JLS (LR), 2024 WL 3858135, at *8 n.15, (S.D. Cal. Aug. 19, 2024). Thus, Donnelly lacks standing to challenge Idaho Code §§ 18-1514 and 18-1517B. Because all claims lie beyond Donnelly's standing it should be dismissed from the case. 13A Wright & Miller, Fed. Prac. &

Proc. Juris. § 3531 (3d ed. 2024); *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) (court correctly dismissed individual plaintiffs for lack of standing but proceeded with the labor union as the sole plaintiff on summary judgment).

**B.  The individual and entity Plaintiffs lack standing because they lack injury.**

   *1.  Publisher Plaintiffs.*

The Publisher Plaintiffs lack standing due to their failure to allege a concrete and imminent injury that is traceable to the Attorney General. *Lujan*, 504 U.S. at 560–61. The Publishers claim that unspecified books were moved to adult-only sections or removed from unnamed libraries in Idaho. Dkt. 1 at ¶¶ 27–41. But they fail to provide any concrete factual allegations to support this claim or that these titles were removed because of the challenged statutes. *See generally* Dkt. 1. The Publishers' claims are based on actions by unidentified libraries that are not parties to this lawsuit, along with speculation as to motive. Dkt. 1 at ¶¶ 27–41. But they cannot rely on subjective chill and self-censorship for standing; let alone when they haven't articulated how they themselves are chilled or censored. *Lopez*, 630 F.3d at 792. Given that the law does not actually provide for a cause of action against them, they cannot allege either.

Additionally, the Publishers have failed to meet the pre-enforcement injury standards. First, the Publishers failed to allege a concrete plan to violate the statute. *Tingley*, 47 F.4th at 1067. The Publishers allege that H.B. 710 prevents their "ability to provide minors with non-obscene speech and materials." Dkt. 1 at ¶ 129. But H.B. 710 does not apply to non-obscene materials so there is no concrete plan to violate the statute. *Lopez*, 630 F.3d at 792. More to the point, Section 18-1517B is not enforceable against them. Similarly, there are no alleged

facts demonstrating a warning or threat of enforcement or a history of past enforcement. *Tingley*, 47 F.4th at 1067. This is because Section 18-1517B creates distinct public and private civil causes of action against school and public libraries, not against the publishers. Since this statute cannot be enforced against the Publisher Plaintiffs they have failed to allege an injury that meets the requirements for this standing element.

### 2. The Authors Guild.

It appears from the Complaint that the Authors Guild is suing the Attorney General on behalf of their members. Dkt. at 1 at ¶ 42. Although the courts permit standing to an organization representing the interests of its individual members, *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972), the constitutional requirement for standing is the same as that of an individual plaintiff. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982). The Author's Guild claims that books written by its members have been "targeted for removal or removed from public school libraries throughout Idaho as a result of HB 710[.]" Dkt. 1 at ¶ 42. However, the complaint does not contain factual allegations that support their claim. *Twombly*, 550 U.S. at 555–56. Additionally, the Authors Guild has not alleged an intent to violate the statute or shown any threat of enforcement against them, citing only the removal of unspecified books by unspecified libraries, with speculative motives. Dkt. 1 at ¶ 42. As with the publishers, the Attorney General cannot enforce Section 18-1517B against the authors. They lack injury and therefore standing.

### 3. Author Plaintiffs.

The Author Plaintiffs lack standing because they allege neither an injury in fact nor an intent to violate the statutes, which are not enforceable against them. The statutes do not

regulate their speech because they are enforceable only against public libraries. Idaho Code § 18-1517B. The injuries claimed by each author are insufficient. Malinda Lo claims that her novel, *Last Night at the Telegraph Club*, has been targeted and put into an adult only section or removed from "some public and public school libraries" and worries that more will follow. Dkt. 1 at ¶ 45. David Levithan also expresses worry that his books are a "target for HB 710" for discussing "LGBTQ+ identity" but does not allege that his books have been removed from Idaho libraries. Dkt 1 at ¶ 47. Finally, Dashka Slater claims that because her books address themes such as "transgender identity, racism, and criminal justice" they are "susceptible to censorship under HB 710[,]" which she claims violates her First Amendment rights and "hampers [her] ability to reach her core audience." Dkt 1 at ¶ 48. But Plaintiffs cannot rely on a subjective chill or the self-censorship of public libraries (as above, the chill or self-censorship of someone else) as their only injury. *Lopez*, 630 F.3d at 792. The claims lack necessary specificity for an injury. *See Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979).

### 4. *Christie Nichols.*

Plaintiff Christie Nichols lacks standing to bring constitutional claims against the state in her official role as the Rocky Mountain High School (RMHS) librarian. Nichols claims that because of H.B. 710, West Ada School District directed her to remove books from the school library as part of her official duties and against her conscience. Dkt. 1 at ¶¶ 60, 62. Since she only claims actions taken within the course and scope of her employment in a public school library, (Dkt. 1 at ¶¶ 62-63) and the statute only regulates her official speech, she lacks a direct injury to her "constitutionally protected individual interests." *Barke v. Banks*, 25 F.4th 714, 719

(9th Cir. 2022); *see also Garcetti*, 547 US. at 421 and *Leonard*, 12 F.3d at 888 (individual Plaintiffs claims dismissed for lack of injury because statute applied only to labor union). Furthermore, a public-school librarian's "abstract outrage" at what she deems is an unconstitutional law with no personal consequences is insufficient to establish standing. *South Lake Tahoe*, 625 F.2d at 237. This is nothing beyond than the "generalized interest of all citizens in constitutional governance" and "entirely speculative consequences" which do not amount to an injury. *Drake v. Obama,* 664 F.3d 774, 780, 782 (9th Cir. 2011) (citation omitted).

### 5.  *Individual Plaintiffs.*

The Student Plaintiffs in this case, J.E. and Olivia Lanzara, both lack standing to sue. Olivia Lanzara is "an 18-year-old senior" at RMHS where books have been removed from shelves at the direction of the school district. Dkt. 1 at ¶ 74. Lanzara alleges that she intended to access books that were removed from the shelves but because of the school district's actions she can no longer do that. Dkt. 1 at ¶¶ 76, 78. However, because Lanzara is not a minor, Idaho Code § 18-1517B does not prohibit a library from loaning her a book. She also has not alleged any restriction from obtaining these books at the local public library or from the school "via the West Ada School District Library." *Id.* at ¶ 78. She therefore lacks standing.

J.E. is a 17-year-old high school student, who is dual-enrolled in college. *Id.* at ¶¶ 65, 72. He also alleges a concern that his school might restrict his access to books, claiming this would put him at a disadvantage with his "future peers who have not had their access to books restricted." *Id.* at ¶ 69. But his school has not restricted any books. *Id.* Additionally, as J.E. stated he is a student enrolled at Lewis and Clark College, as a student he has access to their library materials. *Id.* at 72. J.E. also lacks standing. Separately, Barabara Ersland "wants her

son J.E. to have access to a wide range of books and materials through his school library." Dkt. 1 at ¶ 73. However, as J.E.'s mother, she can check out any books that J.E. wants to read at that library. *See* Idaho Code § 18-1517B(6)(b). She lacks an injury and lacks standing.

Melissa Cull also alleges that she has been injured by Eagle Public Library but cites only concerns over minors, including her children, having access to the three books that the library removed. Dkt. 1 at ¶¶ 80—81. Cull fears that her children will face stigma if they seek out allegedly inappropriate books. *Id.* at ¶ 85. But Cull cannot assert constitutional claims on behalf of "Eagle youth" (Dkt. 1 at ¶ 84) unless she has alleged (1) an "injury in fact" giving her a "sufficiently concrete interest," (2) that she has a "close relation to the third party," and (3) there is a "hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410—411 (1991). Cull has alleged no harm to parents or children, because as a parent she can check out any books she wants and provide them to her children. Dkt. 1 at ¶ 81; *see also* Idaho Code § 18-1517B(6)(b). Cull has failed to show that she has a close relationship with the unnamed youth, or that these youth are unable to assert their own constitutional rights through their own parents. Since there is no direct or imminent injury to Cull and because the statute is not enforceable against private individuals she lacks standing.

**C. The Supreme Court's *Whole Women's Health* decision bars the action.**

Once again, a new set of Plaintiffs make the fatal flaw of attempting "to parlay [official capacity Section 18-1517B(5)] authority, or any defendant's enforcement authority, into an injunction against any and all unnamed private persons who might seek to bring their own [personal capacity Section 18-1517B(3)] suits." *Whole Women's Health v. Jackson*, 595 U.S. 30, 44 (2021). This blending of requested relief by all plaintiffs against all defendants violates the

traditional equitable principle that "no court may 'lawfully enjoin the world at large,' . . . or purport to enjoin challenged 'laws themselves.'" *Id.* (quoting *Whole Women's Health*, 595 U.S. at 44 (order on app. for inj. relief)).

Plaintiffs cannot sue official defendants seeking relief enjoining the use of a private right of action when Defendants do not possess the ability to enforce that private right of action. *Compare* Idaho Code § 18-1517B(3) *with id.* at (4). Plaintiffs here make no bones about the fact that they are suing to prohibit enforcement of "H.B. 710" by the world-at-large, rather than waiting to litigate the merits of a specific claim by a specific private defendant, or a specific and credible threat of unconstitutional enforcement by an official capacity defendant. *See e.g.*, Dkt. 1 ¶¶ 1–22 (discussing the 'actions' of H.B. 710 and asking the Court to "bar[ ] its enforcement."). By seeking to enjoin a challenged law in-itself, and as to all persons, the Complaint runs afoul of the limits on the equitable power of the Court and must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.


DATED: February 26, 2025.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By: /s/ *Aaron M. Green*
AARON M. GREEN
Deputy Attorney General

*Attorney for Defendant Raúl Labrador*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 26, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Deborah A. Ferguson
daf@fergusondurham.com

Craig Durham
chd@fergusondurham.com

Michael J. Grygiel*
mjg395@cornell.edu

Daniela Del Rosario Wertheimer*
ddw83@cornell.edu

*Attorneys for Plaintiffs*
*\* Pro hac vice*

Victor Villegas
victor@lvlawidaho.com
*Attorney for the City of Eagle and The Eagle Public Library Board*

Brian Oakey
boakey@co.valley.id.us
*Attorney for Brian Naugle, Valley County Prosecuting Attorney*

Dayton Reed
dreed@adacounty.id.gov
*Attorney for Jan Bennetts, Ada County Prosecuting Attorney*

Bentley Stromberg
bstromberg@clbrmc.com
*Attorney for Justin Coleman, Nez Perce County Prosecuting Attorney*

/s/ *Aaron M. Green*
Aaron M. Green