RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

AARON M. GREEN, ISB #12397
MEGAN ANDERSON, ISB #10094
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
aaron.green@ag.idaho.gov
megan.anderson@ag.idaho.gov

*Attorneys for Defendant Raúl Labrador*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PENGUIN RANDOM HOUSE LLC, et al., | Case No. 1:25-cv-00061-AKB |
| *Plaintiffs,* | **DEFENDANT RAÚL LABRADOR'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [DKT 22]** |
| *v.* | |
| RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, et al., | |
| *Defendants.* | |

## INTRODUCTION

The State of Idaho puts parents in control of the works children can receive in a school or public library when those works contain material that is harmful to minors. Idaho Code §§ 18-1514(6)(b), 18-1517B. That assistance to parents is what this case is about. Because the Plaintiffs lack standing, are unlikely to succeed on the merits, cannot show irreparable harm, and the balance of equities and the public interest tip in favor of the Attorney General, the Court should deny the Plaintiffs' motion for preliminary injunction.

Plaintiffs lack standing, either because their harms are wholly speculative, or they simply lack a First Amendment or vagueness interest (as government speakers) at issue—or both—and for much the same reasons also lack irreparable harm. Plaintiffs are not likely to succeed in any of the three claims they raise for preliminary injunction purposes. In this case, only government speech is at issue, and no Plaintiff has the First Amendment right to compel the government to buy and arrange books in a library organized and paid for by the democratically accountable branches of government. The statutory vagueness that Plaintiffs point to is, in fact, easily understood. And the statute, even assuming for present purposes that it does implicate First Amendment speech, is permissible under *Miller* as applicable to minors. Neither equities nor public interest tip in favor of compelling the government to speak at taxpayer expense, nor in favor of removing tools to help parents control the degree to which their children are exposed to patently offensive material. The motion should be denied.

## LEGAL STANDARD

For the Plaintiffs to obtain the preliminary relief sought they "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the

absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction

is in the public interest." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citation omitted).

Injunctions should cover only named plaintiffs absent class certification. *Meinhold v. US. Dep't*

*of Def.*, 34 F.3d 1469, 1480 (9th Cir. 1994); *see also Labrador v. Poe*, 144 S. Ct. 921, 923 (2024)

(Gorsuch, J. concurring) (citing *Gill v. Whitford*, 585 U.S. 48, 68 (2018)). The issuance of an

injunction is "an extraordinary and drastic remedy" requiring the Plaintiff to make a "clear

showing" that a preliminary injunction is warranted. *Mazurek v. Armstrong*, 520 U.S. 968, 972

(1997) (per curiam) (citation omitted). To meet this burden, the Plaintiff must offer "evidence

that supports each relevant . . . factor." *Perlot v. Green*, 609 F. Supp. 3d 1106, 1116 (9th Cir.

2022). This evidence must be more than the factual allegations offered in the complaint. *Id.*

In construing state law under Idaho canons of construction, "[t]he Court should,

whenever possible, construe a statute so as to achieve a constitutional result." *Bradbury v. Idaho*

*Jud. Council*, 136 Idaho 63, 68, 28 P.3d 1006, 1011 (2001) (citation omitted). Further, if the

Court "finds that a statute is capable of two interpretations … the court should adopt [the]

construction which upholds the validity of the act." *Regan v. Denney*, 165 Idaho 15, 22, 437 P.3d

15, 22 (2019) (citation omitted).

## ARGUMENT

### I.  Plaintiffs lack standing to obtain a preliminary injunction.

"To determine whether [the] plaintiffs are entitled to a preliminary injunction, the court

must first determine whether they have standing to challenge" the law. *Hoeg v. Newsom*, 652

F.Supp.3d 1172, 1180 (E.D. Cal. 2023). All Plaintiffs have failed to establish Article III

standing. While set forth in detail in the Attorney General's Motion to Dismiss, Dkt. 36-1 at 13–20 and incorporated here, a few key standing points are worth revisiting.

### A.  All Plaintiffs lack Article III standing.

All Plaintiffs lack Article III standing because the allegations in the complaint are "insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To establish standing, plaintiffs must have a "personal stake in the outcome," (*E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021)) which requires plaintiffs to clearly allege each element of the *Lujan* test. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). To meet the requirement for an injury in fact it must be a "concrete and particularized" injury that is "actual or imminent." *Id.* An injury is insufficient under *Lujan* if it is "conjectural or hypothetical" or results from "the independent action of some third party not before the court." *Id.* Further, because the Plaintiffs have brought a First Amendment pre-enforcement challenge, they must show a concrete plan to violate the challenged law, consider whether the enforcement authorities have communicated a specific warning or threats to initiate proceedings, and consider the history of past prosecution. *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (internal quotes omitted).

#### i.    The entity plaintiffs lack standing.

The Publishers and Authors Guild have not alleged an injury that is sufficient for standing because there is no concrete imminent injury that is traceable to the Attorney General. *Lujan*, 504 U.S. at 560–61. While the Publishers claim that some of their books were moved to adult-only sections or removed entirely from unnamed libraries, Dkt. 1 at ¶¶ 27–42, Dkt. 22–1 at 21–23, the law cannot be enforced against the publishers and does not prohibit

them from doing anything. They cannot allege an intent to violate Section 18-1517B, nor can they show a history of enforcement against publishers or the Authors Guild. Their claims fail to show standing because they allege only speculative injury. *See Lujan*, 504 U.S. at 561.

The Donnelly Public Library District lacks standing because, as a political subdivision of the State of Idaho, it cannot sue the State, its officers, or other political subdivisions on constitutional grounds. *City of S. Lake Tahoe v. Cal. Tahoe Reg'l. Planning Agency*, 625 F.2d 231, 233 (9th Cir. 1980). As a "creature" of statute, which cannot seek relief against its "creator" the State of Idaho or its officers, Donnelly is unable to assert these claims. *See* Chap. 27, Title 33, Idaho Code (state establishment of library districts); *see also Pioneers Mem'l. Healthcare Dist. v. Imperial Valley Healthcare Dist.*, 745 F.Supp.3d 1088, 1100 (S.D. Cal. 2024).

### ii.    *The individual plaintiffs lack standing.*

The authors fail to establish Article III standing for the same reason as the publishers. The only injuries claimed by the authors are based upon speculation of future removals by unnamed public and public-school libraries. *See* Dkt. 1 at ¶¶ 45, 47, 48 and Dkt. 22–1, at 23–24. But Plaintiffs cannot rely on a subjective chill or the self-censorship of public libraries or public-school libraries that Plaintiffs speculate is related to either statute. *Lopez v. Candaele*, 630 F.3d 775, 792 (9th Cir. 2010).

Christie Nichols lacks standing because she does not allege any of her speech is chilled, and even if she did, she is speaking as a government employee. *See Barke v. Banks*, 25 F.4th 714, 719 (9th Cir. 2022). In her role as a librarian (Dkt. 22-7 ¶ 3), Nichols was directed by her employer, West Ada School District (a public school district), to review the library materials for books "likely to trigger [a] review" and later to send 60 titles from a provided list to a

central location. Dkt. 22-7 ¶ 9—all 60 remain available with parent permission. All of her actions were completed at the direction of her employer, during working hours, and with school district materials. But since Nichols is a public employee, she does not have standing to bring a First Amendment claim because her speech is wholly attributed to her employer. *Barke*, 25 F.4th at 719–720 (citing *Leonard*, 12 F.3d 885). Because the challenged statutes only regulate the library there is no injury to her "constitutionally protected individual interests." *Id.* at 719; *see also Garcetti v. Ceballos*, 547 U.S. 410, 421, (2006) and *Leonard*, 12 F.3d at 888.

The Student Plaintiffs in this case, J.E. and Olivia Lanzara, both lack standing to sue. Olivia Lanzara is an adult senior at RMHS where books have been removed from shelves but are still accessible. Dkt. 1 ¶ 74. Because Lanzara is no longer a minor Section 18-1517B does not control what she can view without a parent. Dkt. 22-4 ¶ 9. J.E. is a 17-year-old high school student who is dual-enrolled in college, and his high school library has not removed any titles in reaction to HB 710. Dkt. 1 ¶¶ 65, 72. Both students lack injury because they have full access to their school or local public libraries. The Parent Plaintiffs similarly lack standing for lack of injury because neither parent nor their children have been restricted from accessing library materials under Section 18-1517B. Separately, there is no injury because the statute is not enforceable against private individuals.

**B.  Plaintiffs seek an injunction in violation of *Whole Women's Health*.**

The aim of Plaintiffs' motion for preliminary injunction is not merely to prevent the Attorney General or other Defendants from enforcing the challenged statutes against them in circumstances where there is a substantial likelihood of enforcement. Rather, it sweeps broadly and aims to stop private individuals, who are not parties to this case, from using the cause of

action provided in Section 18-1517B(3). That much is abundantly clear from how much of their motion hangs on the hypothetical actions of the public at large, without ever indicating that *anyone* is planning on suing. *See* Dkt. 22-1 at 7–8, 12–13, 17–18, 35–36, 40. The best they can point to is patron usage of the request for review system which is, to put it mildly, not even close to an avalanche of civil litigation. *See* Idaho Code § 18-1517B(7).

This kind of "all plaintiffs against all defendants" buckshot injunction is barred by the Supreme Court's holding in *Whole Women's Health v. Jackson* that "no court may 'lawfully enjoin the world at large,' . . . or purport to enjoin challenged 'laws themselves.'" *Whole Women's Health v. Jackson*, 595 U.S. 30, 44 (2021) (quoting *Whole Women's Health*, 141 S. Ct. 2494, 2495 (order on app. for inj. relief)). To effectively block the enforcement of Section 18-1517B, this court would need to issue "an injunction against any and all unnamed private persons who might seek to bring their own [personal capacity Section 18-1517B(3)] suits." 595 U.S. at 44. This is the kind of injunction against the world that the Supreme Court disapproved. Defendant does not have the ability to enforce the private right of action in Section 18-1517B(3) and Plaintiffs lack standing to seek this sweeping injunction.

## II. Plaintiffs cannot establish the required elements for a preliminary injunction.

Provisional relief may be appropriate under the "sliding scale" approach when "serious questions going to the merits [are] raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). However, even under the "sliding scale" approach, the Plaintiffs must still meet all four elements of the *Winter* test. *Id.*

### A. Plaintiffs lack any likelihood of success.

Plaintiffs' merits claims fail for the reasons set forth in the Attorney General's brief in support of his motion to dismiss. Dkt. 36-1. Three points merit further discussion. First, Plaintiffs' relief is predicated on private speech being regulated—but it is not. Second, Plaintiffs' various challenges on vagueness grounds require the Court to adopt the least reasonable and least constitutional definition of terms—but the Court should decline. Last, Plaintiffs' relief requires that Section 18-1514 and Section 18-1517B flunk the *Miller* test—but they do not under the reading required by Idaho canons and methods of construction.

### i. *Plaintiffs' Complaint challenges government speech which is not subject to First or Fourteenth Amendment restrictions.*

As noted in the motion to dismiss (Dkt. 36-1 at 5–7) Plaintiffs only request injunctive relief pertaining to governmental speakers (public schools and libraries) and therefore only request relief pertaining to government speech that is not subject to First Amendment inquiry. This is true even when private speakers suggest or recommend speech that the government later adopts, or as here, purchases and displays. *See Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215–16 (2015). Then, a "forum analysis is misplaced." *Id.* at 215.

The "compilation of the speech of third parties," like curating a library, is itself "a communicative act." *PETA, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005). "The government may produce films and publications. It may run museums, libraries, television and radio stations, primary and secondary schools, and universities. In all such activities, the government engages in the type of viewpoint discrimination that would be unconstitutional if it were acting as a regulator of private speech." *Id.* at 29. (citation omitted). This makes sense, "the editorial function itself is an aspect of speech." *Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024). A

government can speak by curation just like any other entity—including through its curation of a library which "results in a distinctive expressive product." *See id.* It need not curate to achieve a single specific message in order for the government to speak; that a library may "happily convey the lion's share of" books purchased by it makes no difference, as the choice of what goes *in* that lion's share is necessarily content specific. *Id.* at 738, *accord Summum*, 555 U.S. at 473 (noting that city could exercise editorial control of monuments by "exercising 'final approval authority' over their selection") (quoting *Johanns v. Livestock Mktg. Ass'n.*, 544 U.S. 550 (2005)).

Idaho library districts are political subdivisions created for specific purposes: to provide "planned collections of materials and information services." Idaho Code § 33-2702(6). Similarly, school districts are required to maintain a library "suitable" for their pedagogical purposes. Idaho Code § 33-512(8); *accord* § 33-137(2)(a). In making the "planned collection" or "suitable" library, the State can determine how to plan the collection or what it deems suitable for a school environment, including by declining to provide material that is both obscene as to minors and lacks serious value as to a given minor in the context in which that work is presented to the minor. In fact, the State can go much further than these statutes do, insofar as public schools and libraries are concerned. *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986) (discussing *Bd. of Educ. v. Pico*, 457 U.S. 853, 871–72 (plur. op.) (1982)).

The alternative, as Judge Duncan on the Fifth Circuit has aptly pointed out, is to turn federal courts into the library police. *See generally Little v. Llano Cnty.*, 103 F.4th 1140, 1160–86 (5th Cir. 2024) (Duncan, J. dissenting) rehr'g en banc granted, op. vacated by 106 F.4th 426 (5th Cir. 2024). A rule that makes a public library subject to judicial curation, rather than the

public who funds the library and votes for trustees and legislators, will make courts responsible for making *the exact same* content-specific decisions that a library board or its employees must *necessarily* do to keep libraries from becoming a mere warehouse. *Id.* at 1166–67. Unsuited to judicially manageable standards, *see id.* at 1175–77, the process of picking and choosing a collection of library books (or providing standards for their organization as these statutes do) is the kind of judgment call that belongs with the political branches of government. Indeed, these decisions are *particularly* critical for small libraries that need to make judgements about what their readers want and make tough choices accordingly. Dkt. 1 ¶¶ 50–52. If *that* process is curation, and therefore government speech, so too is direction by the State that material harmful to minors not be given to minors for whom that material lacks serious value. The First Amendment[1] allows the government to speak by curating, and so these challenges fail.

### ii.    *Plaintiffs' vagueness challenges to both statutes are meritless.*

Plaintiffs' raise several vagueness challenges to both statutes. Plaintiffs do not explain in their motion papers or complaint who is chilled,[2] or even *what* is chilled, by the two statutes at issue—every Plaintiff with conceivable First Amendment interests to vindicate against the State (that is, everyone but Donnelly and the librarians) can check out the books they want, buy or sell the books they want, and communicate to the readers they want. What they cannot do, *see supra*, is force a political subdivision to carry the books they want. This on its own

---

[1] This argument is equally fatal to the Fourteenth Amendment claims for the reasons discussed *infra* by *David H.*

[2] The only specific persons identified by Plaintiffs as directly regulated are librarians or public libraries who are either government speakers or political subdivisions. *See e.g.*, Dkt. 22-1 at 33 ("public librarians and others").

should be fatal to a vagueness challenge, even if it isn't fatal to standing: if no Plaintiff conduct is proscribed or regulated[3] then it fails because no guidance to Plaintiffs is necessary. *United States v. David H.*, 29 F.3d 489, 491 (9th Cir. 1994) (citing *Boutelier v. INS*, 387 U.S. 118, 123 (1967) and *United States v. Jordan*, 747 F.2d 1120, 1130 (7th Cir. 1984)) implied overruling on other grounds recognized by *United States v. Garcia-Lopez,* 903 F.3d 887, 893 (9th Cir. 2018).

But assume for argument's sake that we must go further. "[P]erfect clarity is not required even when a law regulates protected speech."[4] *Cal. Tchrs. Ass'n. v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). "Condemned to the use of words, we can never expect mathematical certainty from our language." *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)); *accord Miller*, 413 U.S. at 30 ("god-like" precision not required). And even though a stricter standard applies to laws that regulate First Amendment protected speech, *Cal. Tchrs. Ass'n,* 271 F.3d. at 1150 (citing *Hoffman Ests. v. Flipside Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982)), this is less so where (as here) the only mechanism for enforcement is civil, rather than criminal. *Reno v. ACLU*, 521 U.S. 844, 872 (1997) (citing *Denver Area Ed. Telecomm'ns Consortium, Inc. v. FCC*, 518 U.S. 727 (1996)).

To tick through Plaintiffs' list of vague terms, the Court should reject their challenges:

- Serious value prong. Dkt. 22-1 at 33. This fails because it requires the Court to give effect to scrivener's error rather than legislative intent. But even if the Court

---

[3] Except for Donnelly, who of course cannot sue state officers here. *See* Dkt. 36-1 at 14–15.

[4] Contra Plaintiffs, it is not "indisputable" that either Section 18-1514 or Section 18-1517B implicates "constitutionally protected expression" both because obscenity itself is unprotected by the First Amendment—including obscenity as to minors—and because, again, the only speech at issue is government speech. *Ginsberg v. New York*, 390 U.S. 629, 641 (1968).

finds that missing punctuation controls, it might make the statute overbroad, but it would not "leave librarians guessing" as to which depictions fall under the savings clause. The clause would apply to one prong rather than both. *Cf. Matsumoto v. Labrador*, 122 F.4th 787, 806 (9th Cir. 2024) (one of three verbs was overbroad but not vague).

- Minor. Dkt. 22-1 at 33–34. As explained below, the requirement that a matter be considered "in context in which it is used" requires that the trier of fact consider the individual age of the minor in determining whether the statutes are violated. Idaho Code § 18-1514(6)(b)(ii). If a matter is not harmful to the minor to whom the matter is promoted, given, or made available, the statute has not been violated. Idaho Code § 18-1517B(2).

- Homosexuality. Dkt. 22-1 at 34. *Noscitur a sociis*. Nothing else needs to be said on this point. *See* Idaho Code § 18-1514(3); *see also e.g.*, Dkt. 36-1 at 11–13.

- "Relocation" and "adults only." Dkt. 22-1 at 35. Apart from, again, only complaining about whether these are vague as to *librarian* conduct, these are terms which have common dictionary definitions.

Apart from also seeking to tilt the scales in their favor by arguing from both causes of action (and thus dooming their request under *Whole Women's Health*, *see* discussion *supra* and Dkt. 22-1 at 35), Plaintiffs offer no other vagueness challenges in their motion. They don't explain why a person "of ordinary intelligence" cannot figure out what the terms or clauses at issue mean, especially given the fact that the only people governed by the statute at issue in this case are government employees and government entities. *Grayned*, 408 U.S. at 108.

Even if there are circumstances "at the margins" where "it is not clear whether" a library has adequately complied with Section 18-1514 and Section 18-1517B, putting aside the question of whether this matters when the regulated party is a political subdivision or government speaker, this is not sufficient to prevail. *Cal. Tchrs. Ass'n.*, 271 F.3d at 1152. Any "lingering doubt" that the clear terms above are not good enough is extinguished by application of Idaho canons of construction, which require construction in favor of a

constitutional result. *Gonzales v. Carhart*, 550 U.S. 124, 153 (2007) (applying distinct federal canon); *see e.g.*, *Bradbury*, 136 Idaho, at 68, 1011. Whether because the words are not, properly construed, actually vague, or for lack of showing that a substantial amount of protected speech is chilled, Plaintiffs lack a likelihood of success.

### iii.     Section 18-1514 and Section 18-1517B incorporate the Miller test.

Neither statute is unconstitutionally overbroad or vague because the test for what is "harmful to minors"—and therefore actionable under Section 18-1517B—is just the *Miller v. California* obscenity test applied to minors. 413 U.S. 15, 39 (1973). Obscenity falls outside of the First Amendment protection. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245–46 (2002); *see also Kois v. Wisconsin,* 408 U.S. 229, 230 (1972). "The first step in [First Amendment] overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without [] knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008). "[A] law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010)). Facial invalidation is "strong medicine that is not to be casually employed." *Williams*, 553 U.S. at 293 (cleaned up). It is error to apply heightened scrutiny before finding protected speech at issue. *Tucson v. City of Seattle,* 91 F.4th 1318, 1328–29 (9th Cir. 2024).

A state may provide a more constricting definition of obscenity for minors than for adults. *Ginsberg v. State of N.Y.*, 390 U.S. 629, 636–37 (1968). "States may restrict the access of minors to obscene material so long as the legislature has a rational basis 'to find that exposure to material condemned by the statute is harmful to minors.'" *Powell's Books, Inc. v. Kroger*, 622

F.3d 1202, 1212 (9th Cir. 2010) (quoting *Ginsberg*, 390 U.S. at 641). This is true, even if material obscene as to minors "is not obscene to adults." *Kroger*, 622 F.3d at 1212. (citation omitted).

*Miller* set forth three elements to determine whether a work is obscene. 413 U.S. at 24. First, to be obscene, an average person, applying contemporary community standards, must find that the work taken as a whole appeals to the prurient interest. *Id.* Second, the work must depict or describe, in a patently offensive way, specifically defined conduct including things like sexual conduct, masturbation, excretion, or lewd exhibition of the genitals. *Id.* at 24–25. Third, the work must lack serious literary, artistic, political, or scientific value. *Id.* at 24–25. The Court recognized that it was not necessary to "define regulated materials with ultimate, god-like precision" and also acknowledged that questions of "precisely what appeals to the prurient interest or is patently offensive . . . are essentially questions of fact." *Id.* at 27–28, 30. Additionally, the determining standard for when an otherwise obscene matter has serious value is the objective, reasonable person standard. *See Pope v. Illinois*, 481 U.S. 497, 501 (1987).

With respect to minors, several additional considerations apply. First, a minor does not have First Amendment rights that are "co-extensive with those of adults." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 214 n.11 (quoting *Tinker v. Des Moines Sch. Dist.*, 393 U.S. 503, 515 (1969) (Stewart, J., concurring). "A State may permissibly determine that, at least in some precisely delineated areas, a child—like someone in a captive audience—is not possessed of that full capacity for individual choice which is the presupposition of First Amendment guarantees." *Id.* (quoting *Ginsberg v. New York*, 390 U.S. 629, 649–50 (1969) (Stewart, J., concurring)). Most critically here, "[i]n assessing whether a minor has the requisite capacity for

individual choice the age of the minor is a significant factor." *Erznoznik,* 422 U.S. at 214 n.11. (citation omitted).

The plain text of Section 18-1514 complies with *Miller.* It properly defines what "harmful to minors" means with reference to the first prong (*id.* at (6)(a)), second prong (*id.* at (6)(b)) and contains a savings clause per the third prong which covers all potential obscene works. *Id.* ("Nothing herein contained…"). Additionally, in keeping with the canons of construction adopted by Idaho, the legislative history of Section 18-1514 confirms that it was an attempt by the Idaho Legislature to incorporate—by name, no less—the *Miller v. California* test for obscenity into a definition that would apply to minors. *See* Dkt. 36-3; *Bradbury*, 136 Idaho at 68, 28 P.3d at 1011. Like the other savings clauses enacted in the same bill, the phrase "[n]othing herein contained" begins this clause as well. *See* Dkt. 36-2 at 4, 6, 13. Also like the other savings clauses, it is not given a separate subsection numerate. *Id.* Nothing suggests that the lack of a line break before the sentence is anything other than a copyist's mistake.

Separately, the argument that inclusion of all minors under the definition of "minor" in Section 18-1514 makes the statute overbroad or vague fails. Contrary to the complaint, *see* Dkt. 1 ¶ 160, the U.S. Supreme Court has never established either the "legitimate minority" standard, or any standard prohibiting consideration of the age of individual minors at issue. Instead, under *Erznoznik* and *Pope*, a fact finder using a reasonable person standard must consider whether the matter has serious value as to the specific minor to whom the matter is presented. Plaintiffs' only 'authority' to the contrary is *Virginia v. Am. Booksellers Ass'n., Inc.*, 484 U.S. 383, 388 (1988). But the Court expressly declined to resolve the constitutional question. *Id.* at 393–96. Instead, it certified questions and never revisited the answer. *Id.* at 393.

Rather than relying on a non-decision, the Court should look to *Erznoznik* and *Pope*. These cases, together, *require* consideration of a minor's age and the use of a reasonable person standard and allow a finder of fact to consider whether a matter is obscene to a particular minor in a particular context. Strikingly, at least two Plaintiffs appear to agree with the general principle of such a standard. At Dkt. 22-4 ¶ 10 one states that "[a] reasonable person knows that a 6-year-old should not read books meant for 18-year-olds." Another agrees. Dkt. 22-3 ¶ 9. Both sides seem to agree that reasonableness, including consideration of minor ages and the context in which a matter is presented, is a commonsense standard. Sections 18-1514 and 18-1517B apply this standard because they instruct the fact finder to look to the context in which a work is presented to a minor: necessarily including the minor's age in any given case.

The remaining words with which Plaintiffs take issue are seemingly plucked at random and asserted to be overbroad. *See* Dkt. 1 ¶ 162 (naming several). All such words have clear dictionary definitions and have (for the most part) already been explained by Defendant's arguments in *Northwest*. To the extent that Plaintiffs offer new points of emphasis, they do not explain why they make the statute overbroad, other than the lack of explicit dictionary definitions, which are not required. Ultimately none of the objectionable words expand the definition of obscene material to minors beyond what *Miller* permits. *See* No. 1:24-cv-00335-AKB at Dkt. 32-1 at 21–23. What is left is a constitutional statute that keeps patently offensive matter with sexual conduct, excretion, masturbation, or the like, out of the hands of children when the matter lacks serious value in the context in which it is presented to the minor. *See Tucson*, 91 F.4th at 1328 (reversing for failure to consider constitutional applications).

\* \* \* \*

Section 18-1514 properly defines what is obscene as to minors. To state the obvious, to be obscene as to minors—just like adults—a matter necessarily contains sexual conduct, masturbation, excretion, or lewd exhibition of genitals. Idaho Code § 18-1514(6)(b). The scope of these statutes starts from this narrow base, and Section 18-1517B cabins this definition further. Idaho Code § 18-1517B(2). The savings clause for serious value appropriately looks to context, including the age of the minor to whom a work is presented.

The watchword of these laws, as in *Erznoznik* and *Pope*, is *reasonableness*. The Idaho Legislature understood that a child does not have full capacity for choice, and "the age of the minor is a significant factor" in determining whether, in any given case, First Amendment protection attaches to a work made available to a particular minor. *Erznoznik*, 422 U.S. at 214 n.11. Age is part of the "context" of Section 18-1514(6)(b)(ii). Separately, a reasonable person will also consider the age of the given minor in applying the statute. *Pope*, 481 U.S. at 500–1. The Supreme Court has not adopted a one-size-fits-all-minors rule, let alone in a case that did "not attempt to decide the constitutional issues presented." *Virginia,* 484 U.S. at 393.[5] The statutes, even if required to meet *Miller*'s test, survive.

### B.  Plaintiffs have failed to establish that they are likely to suffer irreparable harm in the absence of a preliminary injunction.

Plaintiffs have failed to show that they are likely to suffer from irreparable harm.[6] "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that

---

[5] Worth noting, unlike in *Virginia*, the only enforcement mechanism that the Attorney General has is an action to seek an injunction for compliance with this *Miller*-compliant standard.

[6] In addition to harms of a speculative nature, these harms are also non-existent because the only speech at issue in this challenge is government speech as discussed *infra*.

cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). If the Plaintiffs claims for a future harm are of a "speculative nature" then they fail this prong. *Id.* at 109.

Despite almost a year of post-enactment history, Plaintiffs' harms are just as ethereal as the ones in *Northwest*. Going in order: Plaintiff Cull describes no harm to herself whatsoever. She can check out any of the 23 moved books—which remain in circulation at Eagle. Dkt. 22-2. Minors can still check out those books with a parent. To the extent that she discusses stigma, she speculates without underlying facts. She articulates no harm at all. Plaintiff J.E. speculates that books may, someday, be removed from his school library but says nothing to suggest this is imminent, or even plausible at his school. Dkt. 22-3. He can, as far as one can tell, check out anything he could previously check out at school. Same with Plaintiff Lanzara, who notes that as an adult she can legally check out any book. Dkt. 22-4 ¶ 9. Curiously, despite having *another Plaintiff* who says exactly how it is possible to check out any of the books under review at Lanzara's school, she suggests that navigating the process is unclear. *Compare id. with* Dkt. 22-7 ¶ 9. She alleges stigma, but this is both hypothetical and not cognizable harm. *See Upper Midwest Booksellers Ass'n. v. City of Minneapolis*, 780 F.2d 1389, 1395–96 (8th Cir. 1985).

Despite quoting the word "inappropriate," Plaintiff Levithan provides no support for his assertion that "H.B. 710 subjectively labels" his works at all. Dkt. 22-5 ¶ 13. He alleges no facts suggesting that his works are being pulled off shelves in Idaho, instead referring to national controversy without noting any harm traceable to Section 18-1514 or 18-1517B. The same is true for the other authors and publishers who allege no specific facts about Idaho except the bare fact of the laws at issue and speculate that libraries in Idaho have removed

their books without any personal knowledge. Dkt. 22-6 ¶¶ 14–16, Dkt. 22-9 ¶¶ 18–21.

Surprisingly, but perhaps explaining why there are no Idaho-specific allegations, Plaintiff Lo's declaration is an almost carbon copy of a declaration she filed in a different case challenging different statutes in Iowa with differing language from Section 18-1514 and 18-1517B. *Compare* Dkt. 22-6 (later paragraphs broken up) *with Penguin Random House LLC v. Robbins*, 4:23-cv-00478-SHL-SBJ (S.D. Iowa) at Dkt. 97-14. The other Author declarations in this case also resemble the cookie-cutter declarations alleging no state-specific harm submitted by other author plaintiffs in Iowa. *See Robbins* Dkt. 97-11, -12, -13. These authors haven't alleged any personal knowledge about what's happening in Idaho concerning their books and have not shown personal harm.

Then there are the government speakers. One simply disagrees with their employer's alleged overreaction to H.B. 710. Dkt. 22-7 ¶¶ 11, 14. Another describes the process of Donnelly's overreaction by pre-reviewing books before a request for review is made under Section 18-1517B(6) and otherwise discusses hypothetical lawsuits that may never come to be. Dkt. 22-8. Both are government speakers who either represent a political subdivision that lacks standing, or a government employee who does not even allege that she is chilled somehow.

None of the affidavits come remotely close to alleging irreparable harm. Plaintiffs fail this prong, which warrants denial of the motion.

## C.  Plaintiffs failed to establish that an injunction is in the public interest or that the balance of the equities favor them.

These final two elements merge as they always do in cases against the government. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Neither equity nor public interest favor the requested universal injunction sought here. First, as the government speech

section demonstrates, it is both inequitable and unjust for Plaintiffs to try to usurp government speech as their own personal platform for speaking whether by forcing the government to buy Plaintiffs' books or to organize them as Plaintiffs desire. The role for Plaintiffs in determining how the government speaks is properly located in the democratic process: voting for legislators, library trustees, and school trustees who will curate and permit curation in the way Plaintiffs feel is warranted. *See Summum*, 555 U.S. at 468 (quoting *Southworth*, 529 U.S. at 235). That is certainly true in cases where the alternative is to ask Article III judges and lawyers to take on the unelected role of constitutional librarian. *Little*, 103 F.4th at 1159 (Duncan, J. dissenting).

Second, the State's interests here are weighty. With absurd constructions bandied about by Plaintiffs, one can't lose sight of what is really at issue. The statute properly and constitutionally aims to combat the presentation of obscene material to minors. The pedigree for this state interest, an aid to parental rights, is long and constitutionally unimpeachable—as is the State's own interest in "the well-being of its youth" as they explore public libraries. *Ginsberg*, 390 U.S. at 639–40. The State is harmed through an injunction against its statutes; *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J. in chambers) and even more so when trying to protect kids from things that even *Plaintiffs* agree should not be presented to younger minors. Dkt. 22-4 ¶ 10, Dkt. 22-3 ¶ 9.

Third, the status quo demonstrates that neither statute threatens First Amendment rights in Idaho—assuming they are implicated in this case at all. The *best* that Plaintiffs come up with in the way of actual harm is the exercise of the request for review provision under Section 18-1517B(7). No person has sued any Plaintiff under either cause of action. No one,

as far as the Complaint or affidavits indicate, has even *threatened* to sue them. To the extent that Plaintiffs believe that there is a sword of Damocles hanging over free speech in Idaho, it is Plaintiffs' own sword: overreacting to a 50-year-old obscenity statute that has been extended to cover the same materials in schools and public libraries. No Defendant forced Donnelly to close its doors to kids. No Defendant has sued demanding that classic works of literature be removed. Everyone can still check out the same books that they could last year, even if some minors sometimes need a parent to be present. The statute is simply a legitimate exercise of the State's authority to keep schools and public libraries from providing obscene materials to minors. Public interest weighs in favor of protecting minors from obscene materials.

## CONCLUSION

For the foregoing reasons, the Court should deny the pending motion.

DATED: March 6, 2025.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By: /s/ *Aaron M. Green*
AARON M. GREEN
Deputy Attorney General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 6, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Deborah A. Ferguson
daf@fergusondurham.com

Craig Durham
chd@fergusondurham.com

Michael J. Grygiel*
mjg395@cornell.edu

Daniela Del Rosario Wertheimer*
ddw83@cornell.edu

*Attorneys for Plaintiffs*
*\* Pro hac vice*

Victor Villegas
victor@lvlawidaho.com
*Attorney for the City of Eagle and The Eagle Public Library Board*

Brian Oakey
boakey@co.valley.id.us
*Attorney for Brian Naugle, Valley County Prosecuting Attorney*

Dayton Reed
dreed@adacounty.id.gov
*Attorney for Jan Bennetts, Ada County Prosecuting Attorney*

Bentley Stromberg
bstromberg@clbrmc.com
*Attorney for Justin Coleman, Nez Perce County Prosecuting Attorney*

*/s/ Aaron M. Green*
Aaron M. Green