UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PENGUIN RANDOM HOUSE LLC; HACHETTE BOOK GROUP, INC.; HARPER COLLINS PUBLISHERS LLC; MACMILLAN PUBLISHING GROUP, LLC; SIMON & SCHUSTER, LLC; SOURCEBOOKS LLC; THE AUTHORS GUILD; MALINDA LO; DAVID LEVITHAN; DASHKA SLATER; THE DONNELLY PUBLIC LIBRARY DISTRICT; CHRISTIE NICHOLS; OLIVIA LANZARA; J.E., by and through his mother and next friend Barbara Ersland; BARBARA ERSLAND; and MELISA CULL,<br><br>        Plaintiff,<br><br>   v.<br><br>RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho; JAN BENNETTS, in her official capacity as Ada County Prosecuting Attorney; JUSTIN COLEMAN, in his official capacity as Nez Perce County Prosecuting Attorney; BRIAN NAUGLE, in his official capacity as Valley County Prosecuting Attorney; JOHN OR JANE DOE; and THE EAGLE PUBLIC LIBRARY BOARD OF TRUSTEES, a department of the CITY OF EAGLE,<br><br>        Defendant. | Case No. 1:25-cv-00061-AKB<br><br>**ORDER STAYING CASE** |

Pending before the Court are the parties' responses to the Court's June 13, 2025, order to show cause (Dkt. 57), requesting each party to address why this case should not be stayed pending

**ORDER STAYING CASE - 1**

the appeal in *Northwest Association of Independent Schools., et al. v. Labrador, et al.*, 1:24-cv-00335-AKB, *appeal filed*, Case No. 25-2491 (9th Cir. Apr. 16, 2025) (Dkt. 58; Dkt. 59; Dkt. 60; Dkt. 61; Dkt. 62; Dkt. 63). Plaintiffs and Defendant Eagle Public Library Board of Trustees oppose a stay, (Dkt. 62; Dkt. 63), while the remaining named defendants do not oppose a stay (Dkt. 58; Dkt. 59; Dkt. 60; Dkt. 61). For the reasons below, the Court orders the instant case be stayed pending the appeal in *Northwest Association of Independent Schools*, Case No. 25-2491.

## I.    BACKGROUND

In 1972, the Idaho Legislature enacted Idaho Code § 18-1514, which defines "harmful to minors" for purposes of Idaho's indecency and obscenity laws. I.C. § 18-1514(6) (1972). In 1973, the Supreme Court issued its landmark decision in *Miller v. California*, 413 U.S. 15, 24 (1973), establishing the three-part *Miller* test for determining if material is obscene. Thereafter, legislative history indicates that the Idaho Legislature amended § 18-1514 in 1976 to conform to the *Miller* test. In April 2024, the Idaho Legislature amended the definition of "harmful to minors" in Idaho Code § 18-1514 when it passed Idaho House Bill 710 (2024) ("H.B. 710"). H.B. 710 also added a new provision (the "Substantive Provision") to Idaho Code § 18-1517B(2) that prohibits schools and public libraries from sharing material deemed "harmful to minors" under § 18-1514.

H.B. 710 adopted legal mechanisms for individuals to enforce the Substantive Provision. Section 18-1517B(3) provides a private right of action (the "Private Enforcement Provision") for any minor, parent, or legal guardian against a school or public library which either gave or made available material harmful to the minor or failed to take reasonable steps to restrict the minor's access to the harmful material. Before seeking relief in court, the minor, parent, or legal guardian must notify the school or library, which then has sixty days to address the individual's concerns.

I.C. § 18-1517B(3). Section § 18-1517B(5) also provides for government enforcement of the Act. Specifically, it provides that the Attorney General or an Idaho county prosecuting attorney may seek injunctive relief against any school or public library that violates the Substantive Provision.

H.B. 710 became effective on July 1, 2024. The same month, a coalition including a nonprofit association, independent private schools, privately funded libraries, students, and parents sued to enjoin the law (the "*Northwest* Plaintiffs"). *Nw. Ass'n of Indep. Sch. v. Labrador*, No. 1:24-CV-00335-AKB, Complaint (D. Idaho July 25, 2025). Defendants included three state officials who have jurisdictional authority to enforce H.B. 710 against schools and public libraries—the Idaho Attorney General, the Ada County Prosecuting Attorney, and the Blaine County Prosecuting Attorney. *Id.*

The *Northwest* Plaintiffs alleged H.B. 710 violates the First and Fourteenth Amendments. *Id.* Count One alleged H.B. 710 is unconstitutionally overbroad and violates the First Amendment by "regulating substantially more speech than the First Amendment permits"; by depriving Plaintiffs of their right to "select the materials they wish to include in their school libraries and their curricula"; and by "imposing a content-based restriction." *Id.* at ¶¶ 233-35. Count Two alleged H.B. 710 is unconstitutionally vague and violates the Fourteenth Amendment because it fails to provide fair notice of the materials schools and public libraries may lawfully make available to minors and because it "invites and encourages arbitrary and discriminatory content-based enforcement" per Defendants' "subjective sensitivities" and those of the parents and minors who may enforce the Act. *Id.* at ¶ 240. Both Counts One and Two hinge on whether H.B. 710 incorporates *Miller* and its progeny.

Following motions practice on the *Northwest* plaintiffs' preliminary injunction and defendants' motions to dismiss, the Court analyzed the text of H.B. 710 and related provisions of the Idaho Code. *Nw. Ass'n of Indep. Sch.*, No. 1:24-CV-00335-AKB, 2025 WL 843747, at *12 (D. Idaho Mar. 18, 2025). ("In the context of interpreting statutes regarding obscenity, a savings clause that incorporates the *Miller* test is the backstop against concluding that the law has an unconstitutional scope."). The Court focused on the *Northwest* Plaintiffs' central issue—the likelihood of succeeding on the argument that the "harmful to minors" definition in § 18-1514(6) fails to incorporate *Miller's* three-pronged test for determining obscenity in § 18-1514(6)'s Savings Clause and accompanying provisions. *Nw. Ass'n of Indep. Sch.*, No. 1:24-CV-00335-AKB, 2025 WL 843747, at *12. The Court ultimately denied the *Northwest* Plaintiffs' preliminary injunction because they were unlikely to succeed on the merits of this central issue. *Id.* at *17.

The *Northwest* Plaintiffs appealed the Court's order and moved to stay proceedings in this Court. *Nw. Ass'n of Ind. Schools*, Case No. 1:24-cv-00335-AKB, Plaintiffs' Motion to Stay (D. Idaho Apr. 16, 2025) (Dkt. 50). They argued "the principal question presented by Plaintiffs' appeal concerns the Court's holding that Plaintiffs are unlikely to succeed on the merits of their claim because H.B. 710 in fact incorporates the *Miller* Test . . . . That question overlaps substantially, if not entirely, with the remaining issues to be resolved before this Court, and a stay will therefore promote judicial efficiency and the 'orderly course of justice'" (Dkt. 50-1 at 2). Upon considering the appropriate *Landis* factors, the Court granted the *Northwest* Plaintiffs' motion. *Nw. Ass'n of Indep. Sch.*, No. 1:24-CV-00335-AKB, 2025 WL 1168268 (D. Idaho Apr. 22, 2025).

Roughly seven months after H.B. 710 went into effect, Plaintiffs in the instant case filed a complaint and moved for a preliminary injunction (Dkt. 1; Dkt. 22). Plaintiffs include national

book publishers, who claim their books have been targeted for restricted adults-only access and removed from public schools and libraries (Dkt. 1 at ¶ 27); authors of books that have allegedly been targeted for adults-only access and removal (*id.* at ¶ 43); the Donnelly Public Library District, who could be sued pursuant to H.B. 710 (*id.* at ¶ 50); a public school librarian at Rocky Mountain High School (*id.* at ¶ 59); several high school students and their parents (*id.* at ¶ 64); and a parent of school aged children who visits Eagle Public Library, which allegedly moved books to an adults-only area after receiving a written notice from an "anonymous individual" asking that books be moved to the adult section (*id.* at ¶¶ 79-82). Defendants include the Attorney General of Idaho, several county prosecuting attorneys from across Idaho, and the Eagle Public Library Board of Trustees (Eagle Library) (*id.* at ¶¶ 86-91). Plaintiffs also name "Jane or John Doe" as defendant, which is an apparent reference to the anonymous person who sent a notice to the Eagle Library asking that several books be moved (*id.* at ¶ 90). Plaintiffs have yet to name or serve this individual.

In addressing the merits of their preliminary injunction, Plaintiffs argue that H.B. 710 is "unconstitutionally overbroad in violation of the First Amendment," including whether it "omits the final prong of the *Miller* test for obscenity," and whether it is an "unjustified and unnecessary burden on older minors' First Amendment right to access materials not obscene as to them" (Dkt. 22-1 at 18-25). Plaintiffs further argue that H.B. 710 contains an "impermissibly vague definition of materials 'harmful to minors'" in violation of the First and Fourteenth Amendments, and that H.B. 710's reference to homosexuality "discriminates based on viewpoint in violation of the First Amendment," among other issues (*id.* at 36-38). Over two months, the parties briefed the pending motion for a preliminary injunction and five pending motions to dismiss (Dkt. 22; Dkt. 27; Dkt. 29; Dkt. 31; Dkt. 32; Dkt. 36).

## II. LEGAL STANDARD

A district court has broad discretion to stay proceedings, including on its own motion. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see Lockyer v. Mirant*, 398 F.3d 1098, 1109 (9th Cir. 2005). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cause on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In issuing a stay of proceedings, a court may consider the following factors: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer [if the case is allowed] to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).[1]

## III. ANALYSIS

Both Plaintiffs and Eagle Library oppose a stay pending appeal of *Northwest Association of Independent Schools*, Case No. 25-2491, while the remaining defendants do not oppose a stay.

---

[1] The Court acknowledges some disagreement amongst district courts within this circuit regarding whether the *Landis* test or "*Nken* test" applies to a party's request to stay proceedings pending appeal. As one district court explained, "courts have reasoned that the *Nken* test 'is applicable when there is a request to stay a district court's judgment or order pending an appeal of the same case,' while *Landis* applies to the decision to stay proceedings, regardless [of] whether the stay is based on a direct appeal or an independent case." *Kuang v. United States Dep't of Def.*, No. 18-CV-03698-JST, 2019 WL 1597495, at *3 (N.D. Cal. Apr. 15, 2019) (internal citations omitted). Only Plaintiffs and Eagle Library oppose a stay in this case (Dkt. 62; Dkt. 63). As Plaintiffs cite *Landis* in opposing a stay (Dkt. 62 at 7), and Eagle Library cites neither case, the court applies the *Landis* test here (Dkt. 50-1 at 4).

For the reasons below, the Court concludes the relevant *Landis* factors justify a stay of the instant case.

**A.     Orderly Course of Justice**

A trial court may stay proceedings when it promotes the efficient resolution of litigation when "independent proceedings . . . bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). Acting in the interest of judicial efficiency, a trial court considers "the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc.*, 300 F.2d at 268. A stay may be especially prudent where the appealed issues are dispositive to the instant case. *Camacho v. Hydroponics, Inc.*, No. EDCV20980JGBKKX, 2021 WL 940318, at *2 (C.D. Cal. Mar. 10, 2021) (ordering a stay because Ninth Circuit's disposition of related case would determine whether court has subject matter jurisdiction).

Here, the merits underpinning both *Northwest* and Plaintiffs' preliminary injunction are whether H.B. 710 incorporates *Miller* and its progeny. As the Court explained in *Northwest Association of Independent Schools*, "a savings clause that incorporates the *Miller* test is the backstop against concluding that the law has an unconstitutional scope." *Nw. Ass'n of Indep. Sch.*, 2025 WL 843747 at *12. Like the *Northwest* Plaintiffs, the instant Plaintiffs argue the "harmful to minors" definition in § 18-1514(6) fails to incorporate *Miller's* three-pronged test for determining obscenity in § 18-1514(6)'s Savings Clause and accompanying provisions (Dkt. 22-1 at 26-28, 33). The Plaintiffs' additional arguments—addressing burdens on minors' First Amendment rights and unconstitutional vagueness—rely on an interpretation of H.B. 710 that fails to incorporate *Miller* (*id.* at 28-31, 31-36). The Ninth Circuit's answer to the *Miller* question in *Northwest* will

bind this Court's resolution of Plaintiffs' identical arguments in this case. *See Flores v. Bennett*, 675 F. Supp. 3d 1052, 1064 (E.D. Cal. 2023) (explaining a stay is proper when the disposition of an independent case will "likely provide highly relevant guidance and possibly create dispositive authority"). This common *Miller* question between *Northwest* and the instant case therefore justifies a stay.

Plaintiffs concede the instant case and *Northwest* "overlap in certain ways" but assert other differences do not warrant a stay in this case (Dkt. 62 at 13). Plaintiffs later argue the Ninth Circuit could "consider appeals from both this case and *Northwest* on a similar, if not consolidated, timeline," if the Court were to rule on their pending motion for a preliminary injunction (Dkt. 62 at 14). Rather than suggest a stay is improper, Plaintiffs' argument implicitly acknowledges both the instant case and *Northwest* share a common legal question: whether the text of H.B. 710 complies with *Miller*.

Plaintiffs also distinguish their litigation by emphasizing that the instant case involves an additional vagueness claim and their "as-applied challenge to HB 710's Private Enforcement Provision" (Dkt. 62 at 14). Plaintiffs submit a list of additional legal and factual issues they argue distinguish their case from *Northwest*, including "concrete examples" of private citizens using the Private Enforcement mechanism, book restriction and relocation, library policy changes, confusion regarding the "Monolithic Definition" of "minor," and "ability of plaintiffs not directly regulated by statute to bring constitutional challenge," among other assertions (Dkt. 62-2). Separately, Eagle Library argues against a stay because Plaintiffs have not demonstrated they have standing to sue Eagle Library, as Eagle Library has no enforcement authority under H.B. 710 (Dkt. 63 at 1-2).

**ORDER STAYING CASE - 8**

These differences relate largely to Plaintiffs and Eagle Library's standing under Article III. Even if the Court were to find each plaintiff in the instant case has standing to challenge H.B. 710 against each defendant, the same key question remains as in *Northwest*—whether the "harmful to minors" definition in § 18-1514(6) fails to incorporate *Miller's* three-pronged test for determining obscenity in § 18-1514(6)'s Savings Clause and accompanying provisions. The *Northwest* Plaintiffs' appeal focuses on the same issue regarding the statutory interpretation of H.B. 710.

For example, while Plaintiffs invoke H.B. 710's Private Enforcement to distinguish their case, this does not overcome the centrality of the *Miller* question raised in both cases. Plaintiffs contend an individual, acting under the Private Enforcement mechanism, notified a library that it violated H.B. 710. Plaintiffs name this person as "John or Jane Doe" (Dkt. 1 at ¶ 90). Even were Plaintiffs to later name the John or Jane Doe defendant, or the Court were to accept Plaintiffs' suggestion that it has the authority to enjoin unnamed defendants, Plaintiffs would still face the same *Miller* question underpinning their motion for a preliminary injunction.[2]

---

[2]   "[A] federal court exercising its equitable authority may enjoin named defendants from taking specified unlawful actions." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44-45 (2021). While a plaintiff may assign unknown defendants a moniker like "John Doe," the Federal Rules of Civil Procedure "[do] not permit such actions against unnamed defendants following a suitable length of time for the plaintiff to identify the John Does." *Culp v. Williams*, 456 F. App'x 718, 720 (10th Cir. 2012). Plaintiffs here argue they have standing to challenge the Private Enforcement Provision because they have named "John or Jane Doe" as the anonymous individual who, acting under the Private Enforcement Provision, sent notices to the Eagle Library requesting books be moved (Dkt. 49 at 25 n.18). They contend this legal question is not at issue in *Northwest Association of Independent Schools* (Dkt. 62 at 9). In issuing the instant stay, the Court declines to rule on the merits of Plaintiffs' standing argument. The Court comments only that, in light of *Whole Woman's Health* and Federal Rules regarding "John Doe" monikers, Plaintiffs' argument

Eagle Library also makes standing arguments to advise against a stay (Dkt. 63). They assert Plaintiffs have no standing to bring their "generalized grievance" against them, so the Court should not defer its pending motion to dismiss Plaintiffs' complaint (Dkt. 63 at 2). Like Plaintiffs, Eagle Library's argument against a stay turns on the merits of their standing arguments, which do not overcome the central *Miller* question on appeal in *Northwest Association of Independent Schools*.

B.   **Damage by Imposing a Stay or Hardship from Moving Forward**[3]

A court considers the potential harms imposed by granting or denying a stay. *Bauer v. Bonner Cnty., Idaho*, No. 2:22-CV-00270-DCN, 2022 WL 7515082, at *5-6 (D. Idaho Oct. 13, 2022) (addressing the risk of harm to both parties opposing and supporting a stay). The party opposing a stay must make a showing of the possibility they will be injured by a stay, including "concrete examples of potential harm." *H.M. v. United States*, No. CV 17-00786 SJO, 2017 WL 6888705, at *3 (C.D. Cal. Oct. 16, 2017).

Here, Plaintiffs argue that a stay would "risk[] the perpetuation of the very chilling effects animating Plaintiffs' challenge to HB 710" (Dkt. 62 at 11). Plaintiffs state that since their free speech concerns amount to "much more than a 'fair possibility' of harm," a stay would be improper (*id.* at 12) (quoting *Landis*, 299 U.S. at 255). Plaintiffs later agree to a stay following a preliminary injunction determination in the instant case, "in the event any party seeks appeal thereof to the

---

is an insufficient distinction between the instant case and *Northwest Association of Independent Schools*.

[3]   In opposing a stay, Eagle Library does not address whether it will be harmed by a decision to grant or deny a stay (Dkt. 63). Accordingly, the Court does not individually address this *Landis* factor as to Eagle Library.

Ninth Circuit" (*id.* at 13). The Court takes notice that they do not argue any harm by this conditional proposed stay, nor do they explain how a stay pending the *Northwest Association of Independent Schools* appeal is more harmful or prejudicial than their own proposed stay. Either stay would have the same effect—a pause of district court proceedings.

Plaintiffs' remaining statements regarding harm, at least as this stage of litigation, are unpersuasive. The Court acknowledges Plaintiffs' invocation of First Amendment concerns (Dkt. 62 at 11). Still, Plaintiffs did not bring the instant case until more than seven months after H.B. 710 went into effect, which suggests this case does not involve emergent conditions. Additionally, Plaintiffs bring their case as a pre-enforcement challenge; as of the time of this order, no named defendants have used H.B. 710's enforcement provisions against Plaintiffs. To the extent Plaintiffs invoke broader First Amendment concerns, the Court has already preliminarily ruled on the constitutionality of H.B. 710. *Nw. Ass'n of Indep. Sch.*, 2025 WL 843747 at *11.

Plaintiffs further cite the "indefinite nature" of the proposed stay as a basis for deciding the pending preliminary injunction motion to avoid the "ossification of rights" (Dkt. 62 at 12) (quoting *Hines v. D'Artois*, 531 F.2d 726, 737 (5th Cir. 1976)). As of the time of this order, the Ninth Circuit has received all parties' briefs in the *Northwest* Plaintiffs' appeal. *Nw. Ass'n of Indep. Sch.*, Case No. 25-2491, Reply Brief (Jul. 14, 2025). The Ninth Circuit is considering the appeal on an expedited preliminary injunction schedule, and the court has notified the parties that it is considering oral argument for November 2025 or the subsequent sitting month. *Nw. Ass'n of Indep. Sch.*, Case No. 25-2491, Notice (Jul. 10, 2025) ("Please review the Portland sitting dates for November 2025 and the subsequent sitting month"). In previously staying proceedings in *Northwest Association of Independent Schools*, this Court understood the parties were seeking an

expedited appeal and were therefore unlikely to face prejudice from staying district court proceedings. *Nw. Ass'n of Ind. Sch.*, 2025 WL 1168268. Given the current status of *Northwest Association of Independent Schools* at the Ninth Circuit, the Court finds Plaintiffs' argument regarding the "indefinite" appeal unpersuasive.

## IV.   ORDER

**IT IS ORDERED that:**

1. All proceedings in this case are **STAYED** pending the appeal in *Northwest Association of Independent Schools*, Case No. 25-2491. Any prior deadlines imposed by the Court are likewise stayed.

2. The parties shall advise the Court in writing within seven (7) days of any substantive decisions made by the Ninth Circuit Court of Appeals in *Northwest Association of Independent Schools et al. v. Labrador et al.*, Case No. 25-2491 that materially affect this case.

DATED: July 22, 2025

Amanda K. Brailsford
U.S. District Court Judge